# Titus *v.* The State.

*Indictment for Murder.*

1. *Homicide; relevancy of evidence.*—On a trial under an indictment for murder, the evidence of a witness that she saw the defendant stab the deceased, and as the deceased attempted to seize the defendant, one W., who was not on trial, stabbed the deceased in the back, is admissible, there being evidence in the case which would authorize the jury to infer that the defendant and W. acted in concert.

2. *Dying declarations as evidence; when proper predicate not laid.*—To authorize the admission in evidence of statements by the deceased as dying declarations, it must appear that he was, at the time, conscious of his condition, and considered that he was in imminent peril of dissolution, though no particular form of words is necessary; and testimony that the deceased, several days after the injury said that "he would die," is not a sufficient predicate for the admission in evidence of a statement made at that time, as a dying declaration; such statement not showing that the deceased believed that he was *in extremis*, and that his death was impending.

3. *Same.*—On a trial under an indictment for murder, where it is shown that some time after the infliction of the wound upon the deceased, which resulted in his death, he sent for a justice of the peace, and stated to him that he did not think he would live more than a few hours longer, and he desired to make a dying declaration, and the physician who attended him said that deceased was very low and he did not think he would live many hours, and that thereupon, the justice of the peace reduced to writing the statement of deceased, such statement as reduced to writing is admissible in evidence as a dying declaration, although the deceased lived several weeks after the making of such statement.

4. *Homicide; admissibility of evidence to affect the credibility of a witness.*—On a trial under an indictment for murder, as tending to affect the credibility of a witness introduced by the defendant, it is permissible to show that such witness is charged by separate indictment with the murder of the deceased; and if such witness denies any knowledge of such a charge, it is competent to prove the fact by introducing in evidence the indictment itself.

5. *Same; same.*—On a trial under an indictment for murder, where a witness, who was introduced by the defendant, on being asked, on cross-examination, if he was not charged by separate indictment with the murder of the deceased, answered, "I suppose so," the indictment against such witness can not then be introduced in evidence.

6. *Same; same.*—While, on a trial under an indictment for murder,

[Titus v. The State.]

the fact that a witness introduced by the defendant, and who was charged under separate indictment for the same murder, washed the clothing of the defendant, is admissible as a circumstance, to be considered with the other facts in the case, as tending to show that such relations existed between her and the defendant as would probably bias her testimony in his favor, yet the mere declaration of such witness to another witness, in the absence of the defendant, is not competent evidence against him for such purpose, but is inadmissible as being purely hearsay.

7. *Murder in the second degree; charge to the jury.*—Where a trial is had under an indictment charging the defendant with murder in the second degree, a charge is erroneous which instructs the jury that "The burden of proof is on the State to show beyond a reasonable doubt every material ingredient of the offense charged; and before you can convict the defendant of murder in the second degree, you must be satisfied beyond a reasonable doubt from all the circumstances attending the killing, that at the time the fatal blow was struck, it was done maliciously and with a previously formed design to take the life of the deceased;" the existence of a previously formed design to take the life of the deceased not being a constituent of murder in the second degree.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The appellant, Albert Titus, was indicted, tried and convicted of murder in the second degree, and sentenced to the penitentiary for fifteen years.

The testimony for the State tended to show that on the night of the killing, there was a dance going on at a house near the scene of the killing; that the defendant came to the house and asked to see one Willie Faunfield, a woman in the house, remarking that he wanted his knife and his clothes; that Willie Faunfield came out of the house, went into her room and gave the defendant his knife and clothes; that while the defendant was standing in the yard, James Harris walked out of the house with his wife, carrying her away from the house; that as he returned, the defendant stabbed him with a knife, and that as Harris attempted to seize the defendant, Henry Williams cut him in the back. The defendant moved to exclude the evidence that Henry Williams cut him in the back, and duly excepted to the court's overruling his motion. Several witnesses testified for the State to substantially the same facts. The cutting occurred on August 25th, 1897. One of the witnesses testified that she was present at the bed side

2

[Titus v. The State.]

of James Harris, after he had been cut several days, and that he said that he would die from his wounds, and stated in said conversation that 'Albert Titus and Henry Williams took my life for nothing.' " The defendant moved to exclude the portion of the testimony of. said witness as to the declaration made by the deceased, that "Albert Titus and Henry Williams took my life for nothing." The court overruled the motion, and the defendant duly excepted.

The State introduced one Press Whitman, who testified that he was a justice of the peace in and for Madison county, and that on October 17th, 1897, he was sent for by James Harris, who told him that he did not think he would live more than a few hours longer, and he desired. to make a dying declaration, and that, thereupon he took down and reduced to writing, as a dying declaration, the statements of said James Harris, and that said Harris lived several weeks after this declaration was made. Thereupon, the State offered to introduce in evidence the statement made by Harris, which was reduced to writing by the witness Whitman, in which statement he said that the wounds he had received would prove fatal, and that he was going to die soon. In this statement he said that he was cut by Albert Titus, the defendant, and Henry Williams, in the manner as testified to by the State witnesses. The defendant objected to the introduction of the alleged dying declaration, upon the ground that the proper predicate had not been laid for its introduction. The court overruled the objection, allowed the statement to be introduced in evidence, and to this ruling the defendant duly excepted.

The testimony for the defendant tended to show that the cutting of the deceased by the defendant was the result of a fight, which arose from a quarrel between the deceased and the defendant.

The defendant introduced as a witness Willie Faunfield, who testified that she did not give the defendant a knife on the night of the cutting of the deceased. The solicitor, on cross-examination, asked the said Willie Faunfield if she was not charged with the murder of said James Harris, and proceeded to read an indictment by the grand jury of Madison county, Alabama, charging the said Willie Faunfield with the murder

[Titus v. The State.]

of said James Harris. The defendant objected to said question and to the reading of said indictment, the court overruled said objection, allowed the question to be asked and the indictment to be read to the jury, and the defendant excepted. The said witness denied having done any washing for the defendant, and also denied having or giving the defendant his clothes.

The defendant introduced Henry Williams as a witness, who testified that a few days before the cutting the deceased told him that he intended to kill the defendant. The witness was then asked if he was not also indicted for killing said James Harris, and to this question the witness replied "he supposed so." The solicitor thereupon proceeded to read an indictment of the grand jury of Madison county, Alabama, charging the said Henry Williams with the murder of the said James Harris, and the defendant objected to the reading of said indictment and the question of the solicitor preceding it, as to whether said witness was not charged with the killing of said James Harris, because the same were illegal, irrelevant and inadmissible, and because such facts did not affect the credibility of the said witness. The court overruled said objection and allowed the solicitor to read the indictment, and to ask said question. To this ruling the defendant excepted.

In rebuttal, the State introduced one Maria Kemp, who testified that she saw the clothes of the defendant which said Willie Faunfield had washed for him and had given him that night; that they were lying near the corner of the dance house, and consisted of shirts; that she knew that they were the clothes of said defendant, because she had seen Willie Faunfield wash them that day, and that said Willie Faunfield had told her that they were Titus' clothes, and she saw her give them to Titus. Said witness testified, on cross-examination, that there were no marks on said clothing by which she could identify them, and that the only way she knew them and could identify them was from Willie Faunfield having told her that they belonged to the defendant, while she was washing them, and from seing her give him some clothes the night of the difficulty, and that she of her own knowledge knew one of the shirts to be that of defendant. The defendant moved to exclude this testimony, because it was hearsay,

and illegal and irrelevant. The court overruled said motion, and the defendant duly excepted. There were other rulings of the court upon the evidence, to which exceptions were reserved, but under the opinion on this appeal, it is unnecessary to set them out in detail.

Among the charges requested by the defendant, to the refusal to give each of which he separately excepted was the following: (2.) "The burden of proof is on the State to show beyond a reasonable doubt every material ingredient of the offense charged; and before you can convict the defendant of murder in the second degree, you must be satisfied beyond a reasonable doubt from all the circumstances attending the killing, that at the time the fatal blow was struck, it was done maliciously and with a previously formed design to take the life of the deceased."

HUMES, SHEFFEY & SPEAKE, for appellant.

WILLIAM C. FITTS, Attorney-General, for the State.

COLEMAN, J.—The defendant was convicted of murder in the second degree. During the trial the defendant reserved certain exceptions to the rulings of the court, which are presented for consideration of this court.

A witness testified that she saw defendant stab deceased in the chest, and as deceased attempted to seize the defendant, she saw one Henry Williams, who was not on trial, stab deceased in the back. The court properly overruled the motion of defendant to exclude so much of said evidence as referred to Henry Williams. He was present with defendant, and without provocation, so far as the record discloses, interfered apparently to prevent deceased from seizing defendant after he was stabbed by defendant. We cannot say there was no evidence in the record, which would authorize a jury to infer that the parties acted in concert.

The proper predicate for the admission of "dying declarations" is stated in *Justice v. The State*, 99 Ala. 180, where the authorities are collated. Applying the rule there laid down, we are of opinion, the preliminary proof did not come up to the strict rule required. It is true, the witness testified, that deceased "said he would die." This statement was made some time after the

[Titus v. The State.]

injury, and the simple statement, "that he would die," does not show that deceased believed that he was *in extremis ;* that death was impending.

The declarations reduced to writing as dying declarations, were properly admitted. He stated that "he believed he would soon die." The physician who attended him said that the "deceased was very low, and that he did not think he would live many hours."

It was competent to show that Willie Faunfield, who had been introduced as a witness by the defendant, was then charged by separate indictment for the murder of deceased, and if she had denied that she had knowledge of such a charge, it would have been competent to have proven the fact in any legitimate way, and for this purpose, the indictment itself might properly be introduced. This evidence, however, was not competent to establish the guilt of the defendant who was then on trial, but only to affect the credibility of the witness Faunfield. The record nowhere shows that the witness answered the question, as to her knowledge, that she was charged also with the commission of the offense.

The witness Williams, for the defendant, was asked the same question, to which he answered, "I suppose so." By this answer the State had the full benefit of the principle upon which such proof could be made, and the court should have sustained an objection to the reading of the indictment against him.

The State was allowed to prove that the witness Willie Faunfield "said that certain articles of clothing that she was washing were the property of defendant." The only principle upon which it was permissible to show that the witness washed the clothing of defendant was, that it was a circumstance, to be considered with other facts in the case, as tending to show such relations existed between her and the defendant, that probably her testimony was biased in his favor. Her mere declarations, in his absence, however, were not competent evidence against him for such a purpose. They were hearsay pure and simple.

Charge No. 2 requested by the defendant was properly refused. The insertion of the words "previously formed design," rendered the charge erroneous as a correct definition of murder in the second degree.

There are other exceptions, but they are of such a character, as will not probably arise on another trial.

Reversed and remanded.