# McEwen *v.* The State.

## *Manslaughter.*

### (Decided July 2, 1907.   44 South. 619.)

1. *Evidence; Dying Declarations; Predicate.*—The facts and circumstances surrounding the decedent as shown by the testimony in this case constitute a sufficient predicate for the admission of dying declarations.

2. *Criminal Law; Construction; Presumption of Innocence.*—A charge asserting that in this case the burden of proof is not shifted from the state to defendant, and the presumption of innocence abides with defendant until all the evidence in the case convinces the jury to a moral certainty that the defendant cannot be guilty, is misleading as tending to lead the jury to the belief that the state is required to show to a moral certainty that the defendant cannot be guiltless.

3. *Homicide; Instructions; Self Defense.*—A charge asserting that if deceased first used verbal insult to the defendant and defendant retorted in kind and was then assaulted by deceased, defendant was entitled to defend himself against such aggression, and if he did not fight willingly nor by his voluntary consent, and there was no reasonable means to escape or retreat, without increasing his real or apparent danger, or if he honestly believed he was in imminent danger to life or limb, etc., at the time he struck the blow, as such would appear to a reasonable person, he was not guilty, improperly charges the law of freedom from fault and was properly refused.

4. *Same.*—A charge on self defense which omits the elements, or any of them necessary to make up such defense is properly refused.

5. *Criminal Law; Reasonable Doubt; Instruction.*—A request to charge that the jury should be satisfied beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis, and of every circumstance necessary to show that defendant is guilty before a conviction can be had, and that the burden was on the state to show this, was confusing and properly refused because it is not clear as to what it was the state had the burden of showing.

APPEAL from Limestone Circuit Court.

Heard before Hon. Oceola Kyle, Special Judge.

Ernest McEwen was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The facts are sufficiently stated in the opinion of the court. The court refused the following charges requested by the defendant: (R) "In this case the proof was

not shifted from the state to the defendant, and the presumption of innocence abides with the defendant until all of the evidence in the case convinces the jury to a moral certainty that the defendant cannot be guilltess." (F) "I charge you, gentlemen of the jury, that if deceased first used verbal insult towards the defendant and the defendant retorted by using the same character of insult to him, then he was assaulted by the deceased, and defendant had the right to defend himself against such aggression on the part of the deceased, if such you find occurred, provided he (defendant) did not fight willingly, nor by his voluntary consent, and provided, further, there was no reasonable means of escape by retreat without increasing his real or apparent danger, and if you further find that under the circumstances existing at the time defendant struck the blow he entertained honestly the belief that he was in imminent danger to life or limb, and the conditions at the time were such as would have impressed upon the mind of a reasonable person that there was such imminent danger, though there was no such danger in fact, but that it was only apparent." (G) "The jury should be satisfied beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis and of every circumstance necessary to show the defendant is guilty before they can convict the defendant, and the burden is on the state to show this." The following charge was given for the state:: "I charge you, gentlemen of the jury, that if you believe from all the evidence in this case beyond a reasonable doubt that the defendant entered into the fight willingly in which Bert Mc-Cormack lost his life, then he cannot invoke the doctrine of self-defense."

W. R. WALKER, for appellant.

Dying declarations should be received with the greatest of caution, and the primary facts upon which their admissibility depends should be closely scrutinized.—*Wharton on Homicide* (2nd Ed.) 975; *Ward's Case,* 78 Ala. 441. Dying declarations to be admissible must have been made under a sense of the impending dissolution, and of its certainty, and there must have been an expectation of a speedy death.—*Wharton on Homicide* (2nd Ed.) 991; *Titus' Case,* 117 Ala. 16; *Johnson's Case,* 102 Aa. 1; *Young's Case,* 95 Ala. 4; *Sims' Case,* 139 Ala. 74; 2nd Wigmore on Evidence, Secs. 1440 and 1441; 1st Elliot on Evidence, Sec. 349; *Cole's Case,* 105 Ala. 76.

The wrongful admission of dying declarations is reversible error.—*Wharton on Homicide* (2nd Ed.) 976; *State vs. Johnson,* 40 Am. St. Reps. 405. One who merely answers one verbal insult and abusive epithet with another is not deprived of defending himself against the aggression of the party first using such verbal insult.—*Howell's Case,* 79 Ala. 283. It is erroneous to refer to the jury a question of law for decision.—*Mills' Case,* 42 Sou. Rep. 816; *Jones' Case,* 79 Ala. 23; 2 Mayfield's Dig. page 577, Section 28; *Morris' Case,* 41 South. 208; *Tribble's Case,* 41 Sou. 183..

ALEXANDER M. GARBER, Attorney General, for the State. No brief came to the Reporter.

DENSON, J.—The defendant was convicted of manslaughter in the first degree, under an indictment charging him with the murder of Bert McCormack. The defendant, the deceased, and several others, all under the influence of liquor, were engaged on a Sunday morning in playing craps, when the difficulty in which the deceased lost his life occurred. From the evidence it is

.made to appear that the difficulty was mutual, and was commenced by the defendant and the deceased bandying epithets between themselves; there being conflict as to which usd the first epithet. In the language of the state's witness the real difficulty was preceded by a "cuss fight." The defendant cut the deceased with a pocket knife; the knife penetrating the liver. From the wound made by the knife the deceased in about two weeks died. The attending physician testified that the knife penetrated deceased's liver, and that he died from peritonitis superinduced by this wound.

The first exception reserved by defendant on the trial presents for review the ruling of the court in respect to the sufficiency of the predicat for the admission of the declaration made by the deceased as a dying declaration. State's witness Haywood testified that at the time the cutting was done he said to the deceased, "That boy [defendant] has cut you," and that deceased replied, "Yes; he has cut me and cut me to death." State's witness Surginer testified that he was with the deceased after he was cut, and nursed him; that deceased talked with him on Thursday before the Sunday on which he died, and told him (witness) that he (deceased) was going to die, and that he was killed for nothing. He further testified that the deceased had had a chill the night before, and was worse on this day. While the solemnity under which dying declarations are usually made is deemed in some sense an equivalent for the sanctity of an oath, yet the admissibility of such declarations rests upon the grounds of necessity and public policy, and upon the presumption that, in the absence of other proof, crimes might go unpunished. The rules which govern the admissibility of such testimony are familiar and rudimental. The authorities abound with discussion of the reasons and considerations upon which such declara-

tions are admitted, and we deem it unnecessary to repeat them in extenso here. However it must appear that they were made under the realization and solemn sense of impending death, when the motive for falsehood may be presumed to have been lost in the despair of life.— *McClean's Case,* 16 Ala. 672; *Kilgore's Case,* 74 Ala. 1; *Jordan's Case,* 82 Ala. 1, 2 South. 460; *Hussey's Case,* 8 Ala. 121, 6 South. 420; *Pulliam's Case,* 88 Ala. 1, 6 South. 839; *Walker's Case,* 139 Ala. 56, 35 South. 1011; *Gregory's Case,* 140 Ala. 16, 37 South. 259.

The defendant insists that the evidence did not show that the declarant was laboring under a sense of impending death, and amongst the authorities cited in support of the insistence is *Titus' Case,* 117 Ala. 16, 23 South. 77, cited as the one nearest in point. The declaration in that case held inadmissible was based on this testimony: A witness testified that she was present at the bedside of James Harris (the declarant) after he had been cut several days, and that he said he would die from his wounds. It will be observed that there was no proof whatever of the declarant's condition physically, and no proof of any previous expression by the declarant in respect of the effect the wound would have upon him. In the instant case the declaration made by the deceased immediately after the wound was received manifested a realization on his part of its serious nature from the time it was inflicted. He lingered nearly two weeks before the declaration was made, and the night before it was made he had a chill. He was worse at the time of the declaration, and died three days after it was made. Coupling all this with the declaration, "I am going to die," we think distinguishes the case from the *Titus Case,* and afforded a basis from which it was reasonable for the court to infer that the declarant was sensible of his danger and realized that death was impending. The

sufficiency of the predicate was a question to be determined by the court, and on the considerations adverted to we feel warranted in sustaining the finding of the court.—*McClean's Case,* 16 Ala. 672; *Sim's Case,* 139 Ala. 74, 36 South. 138, 101 Am. St. Rep. 17; and authorities cited supra.

There is no merit in the other exceptions reserved to the rulings of the court on the evidence, and they are not argued in brief by counsel for appellant.

Three charges refused to the defendant, designated, respectively, "R," "F," and "G," are presented for review by the bill of exceptions. Taking them up in the order in which they are discussed in the brief, we will first consider charge R, which is in this language: "In this case the proof is not shifted from the state to the defendant, and the presumption of innocence abides with the defendant until all of the evidence in the case convinces the jury to a moral certainty that the defendant cannot be acquitted." This charge, without any discussion of it, was held good in the case of *Smith v. State,* 68 Ala. 424. The charge was again presented for consideration in *Adams' Case,* 133 Ala. 166, 31 South. 851, and, with the *Smith Case,* called to the court's attention, the charge was held to be faulty, because misleading in its tendency. We are now asked to recede from the *Adams Case,* and to hold the charge a good one, and its refusal error. We are firmly of the opinion that the charge is misleading, in that the jury might have been impressed that the "burden of proof" rested upon the state to show that the defendant could not be guiltless. It is obvious that this exacts too high a degree of proof, and our later cases condemn charges asserting the proposition. The charge was properly refused—*Webb's Case,* 106 Ala. 52, 18 South. 491; *Barnes' Case,* 111 Ala. 56, 20 South. 565; *Allen's Case,* 111 Ala. 80, 20 South. 490; *Thomas' Case,* 107 Ala. 13, 18 South. 229; *Bonner's Case,* 107 Ala. 97,

[McEwen v. The State.]

18 South. 226; *Andrew's Case,* 134 Ala. 47, 32 South. 665.

Aside from the fact that charge F is not clear in its meaning, all that is stated in it may be true, and yet the defendant may by his misconduct have provoked the deceased to the first use of insulting language; and, if he did, it cannot be said that he did not encourage the difficulty. A person must not be disregardful of the consequences of any wrongful word or act, and must refrain from saying or doing that which may encourage or provoke a difficulty, to keep himself in the attitude of one free from fault and entitled to invoke the doctrine of self-defense. The charge was properly refused.—*Gilmore's Case,* 126 Ala. 21, 28 South. 595; *Wilkins' Case,* 98 Ala. 1, 13 South. 312.

Charge G lacks clearness of meaning as to what it is the state bears the burden of showing; and by the use of the word "and" after "hypothesis" the charge is rendered confusing.

The charge given at the request of the state asserts a correct proposition, and the criticism made of it by appellant's counsel is not well founded. A charge which invokes the doctrine of self-defense must, of course, state the constituent elements which go to make up self-defense, and, if in such charge all the elements should be set out except freedom from fault, by all the decisions of this court it would be faulty; and, it being the law that one who enters willingly into a difficulty is not free from fault, it must follow that the court properly gave the charge for the state.—*Gilmore's Case,* 126 Ala. 21, 28 South. 595.

There is no error in the record, and the judgment of conviction must be affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON. JJ. concur.