**EVANS v. STATE.** (2 Div. 810.)

(Supreme Court of Alabama. May 31, 1923.)

1. **Homicide ⚖⟶203(7)—Predicate for dying declaration held sufficient.**

In a murder prosecution, that about two or three weeks before death of the person shot she called her mother to her bedside and said, "I have something to tell you; I think I am going to die," was sufficient to authorize the question of the witness, "What did Jennie state to you about being shot?"

2. **Homicide ⚖⟶214(1)—Dying declaration by wife that she had been afraid to say that her husband had shot her held admissible.**

In a prosecution of defendant for murdering his wife, a dying declaration by the wife to her mother that she had been afraid to say that her husband had shot her, but she wanted to tell her mother the truth, was admissible as tending to show the reason that impelled decedent to first state that her injury was accidental, and as further tending to show that her statement was deliberately made, and intended by her to be used as evidence after her death.

3. **Homicide ⚖⟶214(1)—Statement in dying declaration that declarant wanted to tell the truth held admissible.**

In a prosecution for the murder of defendant's wife, wherein a dying declaration by

the wife sought to be introduced, to the effect that she had been afraid to say that her husband had shot her, but she wanted to tell her mother the truth, no error was committed in overruling the defendant's motion to exclude so much of the declaration as "she wanted to tell the truth"; this being part of the circumstances surrounding the decedent at the time the declaration admitted in evidence was made, giving it the sanctity of an oath. .

**4. Jury ⬦⟿75(1)—Court has power to excuse juror for cause regarded as sufficient by it.**

It is within the legal power of the court in a prosecution for murder to excuse a juror for a cause regarded as sufficient by the court.

**5. Jury ⬦⟿82(2)—Duplication of name of venireman on special venire held no ground for quashing it.**

That the name of a venireman appears twice on the special venire list in a prosecution for murder constitutes no ground for quashing the special venire.

**6. Criminal law ⬦⟿1059(1)—Reservation of exception held proper method to present for review action of court compelling defendant to strike from venire containing duplication of names.**

Where, in a prosecution for murder, it appeared that the name of a venireman had been duplicated on the special venire list, and where the court nevertheless compelled defendant to strike from the venire containing the duplication, the reservation of exceptions to such action of the court was a proper method to present for review the court's action in compelling defendant to strike from a venire constituting a less number of jurors than that provided by the order of the court on defendant's arraignment. .

**7. Criminal law ⬦⟿1166½(5)—Requiring defendant in murder prosecution to strike from special venire list containing duplicate name held not prejudicial.**

Where, in a prosecution for murder, the name of a venireman was duplicated on the special venire list made up under Gen. Acts 1919, p. 1041, and the court compelled defendant to strike from the list containing such duplication, the error was not prejudicial; the venire containing 49 more names than the minimum fixed by law, and it not appearing that less than 30 veniremen appeared.

Thomas, Sayre, and Miller, JJ., dissenting.

Appeal from Circuit Court, Sumter County; R. I. Jones, Judge.

Governor Evans was convicted of murder in the second degrée, and he appeals. Affirmed.

I. I. Canterbury, of Linden, for appellant.

The objection made to the venire because of the repetition on the list of the name of Mitchell should have been sustained, and such objection was properly brought to the attention by motion to quash. Cain v. State, 16 Ala. App. 303, 77 South. 453; Zininam v. State, 186 Ala. 9, 65 South. 56; Acts 1919, p. 1040; Roberts v. State, 68 Ala. 515; Darby v. State, 92 Ala. 9, 9 South. 429; Hall v. State, 130 Ala. 45, 30 South. 422. To authorize the admission in evidence of statements by the deceased as dying declarations, it must appear that deceased was, at the time, conscious of his condition and considered that he was in imminent peril of dissolution. Justice v. State, 99 Ala. 180, 13 South. 658; Titus v. State, 117 Ala. 16, 23 South. 77; Gissendanner v. State, 18 Ala. App. 199, 89 South. 835; Fonville v. State, 91 Ala. 39, 8 South. 688. The statement of deceased "that she wanted to tell the truth" was inadmissible. Sullivan v. State, 102 Ala. 135, 15 South. 264, 48 Am. St. Rep. 22; Sanford v. State, 143 Ala. 78, 39 South. 370.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The list of jurors not being reduced below 30 on account of the duplication, no duty devolved on the court to summon other jurors. Acts 1919, p. 1040. The dying declaration of deceased was properly admitted. Tyler v. State, 207 Ala. 129, 92 South. 478.

THOMAS, J. The indictment was for murder.

[1] The predicate for the dying declaration was laid by the state, through the witnesses Dr. Robinson and Lewis, that about two or three weeks before Jennie's death she called her mother, the witness Lewis, to her bedside, and said: "I have something to tell you; I think I am going to die." This was sufficient to authorize the question: "What did Jennie state to you about being shot?" Patterson v. State, 171 Ala. 2, 54 South. 696; McEwen v. State, 152 Ala. 38, 44 South. 619; Gibson v. State, 193 Ala. 12, 69 South. 533; Martin v. State, 196 Ala. 584, 71 South. 693; Carmichael v. State, 197 Ala. 185, 72 South. 405; Watts v. State, 204 Ala. 372, 86 South. 70. In Parker v. State, 165 Ala. 1, 9, 51 South. 260, the quotation from Mr. Wigmore, which was approved, was that—

"No rule can here be laid down. The circumstances of each case will show whether the requisite consciousness existed; and it is poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances." 2 Wigmore on Evidence, p. 1809, § 1442.

[2] In the instant predicate the statement was not a mere exclamation, as it was in Titus v. State, 117 Ala. 16, 23 South. 77, but it was such a statement as showed the intention of declarant to make it evidence under the solemnity of the knowledge of her impending dissolution. The statement was: "I have something to tell you; I think I am going to die." Jennie (decedent) said that she "had been afraid to say that Governor, her husband, had shot her, but she wanted

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

·to tell her (Evaline Lewis) the truth." No error was committed in overruling the defendant's objections and exceptions to the introduction of the dying declaration in evidence.

[3] Separate objection to the declaration of the witness Lewis that "Jennie said that she had been afraid to say that Governor, her husband, had shot her" was made and overruled; the statement was admissible as tending to show the reason that impelled the decedent to first state that her injury was accidental, and as tending further to show that her statement was deliberately made, and that she intended it to be used as evidence after her death. So, also, there was no error in overruling defendant's motion to exclude so much of the dying declaration as "she wanted to tell the truth." This was a part of the circumstances surrounding the decedent at the time the declaration admitted in evidence was made, giving the same the sanctity of an oath. In Sullivan v. State, 102 Ala. 135, 142, 15 South. 264, 48 Am. St. Rep. 222, the expression, "I pray God to forgive him," was held inadmissible, on the ground that it in no way related to or shed any light on the act of killing or that which apparently led to it. The fact that the instant decedent had theretofore said that she accidentally shot herself made competent her whole dying declaration, including that "she wanted to tell the truth," and accompanying her statement of the reason for having made such former statement competent.

[4, 5] There is nothing in the insistence that it is not within the legal power of the court to excuse a juror for a cause regarded as sufficient by the court. Caldwell v. State, 203 Ala. 412, 84 South. 272; Culver v. State, 207 Ala. 657, 93 South. 521. Defendant moved to quash the special venire for his trial because the name of one Jas. A. Mitchell appeared twice on the said list, etc. It was admitted, and arguments of counsel proceeded on the assumption that the name, Jas. A. Mitchell, duplicated on the venire, referred to "one and the same person." This motion was properly overruled under the statute.

[6] The defendant further objected to being required to strike from such venire for the reasons assigned—"that James A. Mitchell appears twice on said list"; "that said Mitchell is one and the same person," and that "by reason of said list" and duplication therein "the list is reduced" by one "as he should have and to which he is entitled." The court overruled "defendant's objection," and compelled him to strike from the venire containing this duplication, and to the action of the court defendant duly reserved exception. The latter method was proper to present for review the action of the trial court in compelling defendant to strike from a venire constituting a less number of jurors than that provided by the order of the court on defendant's arraignment.

The statute requires special venires in capital cases to be duly designated by the court in its order therefor at the arraignment, that is, to fix the size of it within certain limits—from 50 to 100 jurors—"and shall then in open court draw from the jury box the number of names required with the regular jurors drawn for the week set for the trial to make the number named in the order, and shall cause an order to be issued to the sheriff to summon all persons therein named to appear in court on the day set for the trial of the defendant, and must cause a list of the names of all the jurors drawn for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant by the sheriff." Gen. Acts 1919, p. 1041. Analogy is found in rulings under the former statutes, providing that, whenever any person or persons stand indicted for a capital felony, the court must make an order commanding the sheriff to summon not less than 50 nor more than 100 persons, including those drawn and summoned on the regular juries for the week set for the trial of the case, and shall then, in open court, draw from the jury box the number of names required, with the regular jurors drawn and summoned for the week set for the trial, to make the number named in the order, etc.; that a failure in compliance therewith as to such venire provided by the order was available to a defendant on seasonable objection. Gen. Laws, Sp. Sess. 1909, p. 319; Acts 1919, p. 1041. Thus, in Roberts v. State, 68 Ala. 515, where the court fixed the number at 100, and only 99 were summoned, as one name was repeated, it was held that this was good ground for quashing the venire on appropriate motion. Similarly, it has been held to be error where a juror was on both the special venire and the regular panel for the week, so that, where 50 were ordered in addition to the regular panel, there were only 49 on the venire served on defendant. Darby v. State, 92 Ala. 9, 12, 9 South. 429. The same principle was applied in McQueen v. State, 94 Ala. 50, 10 South. 433; Wilkins v. State, 112 Ala. 55, 21 South. 56; Hall v. State, 130 Ala. 45, 30 South. 422; and Noel v. State, 161 Ala. 25, 29, 49 South. 824. As bearing analogy, it was held reversible error where the trial court designated 79 persons as constituting the venire to try the capital felony in question, and drew 40 names from the jury box, leaving a shortage of 39 to be covered by the regular jurors drawn and summoned for the week, and the record showed that less than 39 persons were drawn and summoned for the week. Carmack v. State, 191 Ala. 1, 67 South. 989; Jackson v. State, 171 Ala. 38, 55 South. 118; Bailey v. State, 172 Ala. 418, 55 South. 601; Andrews v. State, 174 Ala. 11, 56 South. 998, Ann. Cas. 1914B, 760; Tennison v. State, 188 Ala. 90, 100, 66 South. 112;

Whittle v. State, 205 Ala. 639, 643, 89 South. 43; Clarke v. State, 3 Ala. App. 5, 57 South. 1024; Linggold v. State, 10 Ala. App. 57, 65, South. 304; and holdings to the effect that the court must correctly fix the number of jurors to constitute the venire. Jackson v. State, supra; Harris v. State, 172 Ala. 413, 414, 55 South. 609; Coleman v. State, 17 Ala. App. 376, 84 South. 861; Zininan v. State, 186 Ala. 9, 65 South. 56.

In the opinion of the writer, the deficiency of the venire being challenged by appropriate objection, and the defendant having discharged the burden of proof assumed by him to show the identity of name and the identity of person (Ex parte Davis, 200 Ala. 577, 76 South. 935), the objection should have been granted, and a full venire given him, and in the failure there was reversible error. In this conclusion I have the concurrence of Justices SAYRE and MILLER, who dissent from the view expressed for the majority on said point.

[7] The majority of the court, however, on this point are of opinion that no reversible error has been committed, for reasons stated by Mr. Chief Justice ANDERSON, as follows:

"The majority, composed of ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., are of the opinion, and so hold, that the trial court did not commit reversible error in putting the defendant on trial by the venire drawn, notwithstanding the duplication on the list of the name of Jas. A. Mitchell. This error doubtless occurred in filling the box, and, notwithstanding the venire was one name short, it contained 49 more names than the minimum number fixed by law, and from aught appearing 30 or more appeared, and it was not necessary to augment the number unless reduced below 30. The authorities relied upon in the opinion of THOMAS, J., except perhaps the Jackson Case, were under older jury laws; but the law of 1909 and 1919 indicated a legislative desire to avoid reversals by errors of this character should it appear that there was no error in the order of the court, and that the defendant was tried by what constituted a lawful venire, that is, had a venire of 50 or over in the first instance, and the list from which he was to strike contained 30 or more names. Courts are not only intended to administer justice, but should be also conducted for practical purposes, and to our mind it would be a legal travesty to reverse this case solely upon the ground that the name of Mitchell was duplicated, notwithstanding the venire contained 99 names, and the defendant had every means of securing a fair and impartial jury."

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., concur.

SAYRE, THOMAS, and MILLER, JJ., dissent.