94 So.2d 209

Rodgers PARKER

v.

STATE of Alabama.

6 Div. 890.

Supreme Court of Alabama.

Nov. 1, 1956.

Rehearing Denied April 4, 1957.

Skidmore & Davidson, Tuscaloosa, for appellant.

John Patterson, Atty. Gen., Robt. Straub and Wm. C. Younger, Asst. Attys. Gen., for the State.

STAKELY, Justice.

Rodgers Parker (appellant) was indicted for the murder of George Wynn, deceased. Trial was had on a plea of not guilty with the result that the jury returned a verdict of murder in the second degree, fixing the punishment at 30 years imprisonment . in the penitentiary. The court adjudged and sentenced the appellant accordingly and from such judgment this appeal is taken.

I. On the day set for the trial a motion was filed to quash the venire on the ground, among others, "that the sheriff did not summon Floyd E. Jennings as a juror as required but did summon one Floyd E. Jenkins as a juror instead of the said Floyd E. Jennings." The evidence shows that the defendant was served with a copy of the venire which listed as number 38, Floyd E. Jennings, Beat 16, Foreman, 1629 First Avenue, Central Foundry.

The evidence further shows that Floyd E. Jenkins was served with the summons and served as a regular juror for two days during the week of defendant's trial. After making the motion that Jenkins had been summoned instead of Jennings, the court ordered the sheriff to bring in Jennings,

who was placed on the jury panel along with Jenkins and the motion was over-ruled. Floyd Piper Jennings served four days as a juror and it appears that there was a clerical mistake in his name as the defendant's list of jurors contained the name of Floyd E. Jenkins. The defendant demanded a struck jury and both of these jurors, Floyd E. Jenkins and Floyd P. Jennings, were struck.

The testimony further showed that Mrs. Fannie H. Palmer prepared the individual jurors' cards which were then placed by the jury commission in the jury box. She stated that she prepared the jury card in question, that it was typed up as "Floyd E. Jennings, Beat 16, 1629 First Avenue, Central Foundry." According to her testimony this particular card came back to her with the name "Jennings" stricken out and the name "Jenkins" written in with ink.

Miss Doris Thrower, an employee of the circuit clerk, testified that acting on the instructions of the court bailiff, she struck out the name "Jennings" and wrote in with ink the name "Jenkins". This act was later approved by the clerk of the court.

Lowell Hardin, Clerk of the Circuit Court, testified that in the regular course of his duties he kept a certificate book, used to pay the individuals who served as jurors during the week. Certificates for this particular week (April 14, 1956), showed that Floyd E. Jenkins served four days as juror and a Mr. Jennings served two days as a juror.

To summarize, a situation is presented where a juror, Floyd E. Jenkins, was summoned but not drawn and the placing of Floyd P. Jennings who was drawn, on the panel by the court on the day of the trial. Accordingly the defendant was required to strike from a panel including both Floyd E. Jenkins and Floyd P. Jennings.

Our cases hold that, "* * * 'clerical and ministerial mistakes in the preparation of the venire' and list to be served on defendant do not furnish sufficient ground to

quash the venire when it does not appear that prejudice resulted. Zininam v. State, supra [186 Ala. 9, 65 So. 56]; Spooney v. State, supra [217 Ala. 219, 115 So. 308]." Irwin v. State, 220 Ala. 160, 161, 124 So. 410, 411.

Section 67, Title 30, Code of 1940, provides:

"If the sheriff fails to summon any of the jurors drawn, or any jurors summoned fail or refuse to attend the trial, or there is any mistake in the name of any juror drawn or summoned, none nor all of these grounds shall be sufficient to quash the venire or continue the cause."

In Irwin v. State, supra, the clerk in making the copy of the venire for service on the defendant confused the names of two men. It seems that Elmus Rutledge was drawn as a regular juror for the week of the trial of the case and appeared and served as such. The list of the venire served on the defendant showed the name of Elmus Drinkard, as residing at Albany. There was a qualified juror in the county named Elmus Drinkard who resided at Falkville and who had served as a regular juror of the court for the preceding week. However, Drinkard had not been drawn, summoned and apparently was not in attendance. In denying the petition for certiorari this court held, "The error in the list constituted no defect in the venire, but was merely a defect in the copy of it served on defendant."

In the light of the statute and authorities cited above, we find no error in the action of the court in refusing to quash the venire. See Evans v. State, 209 Ala. 563, 96 So. 923.

■ II. The appellant predicates error on the action of the court in reading in its oral charge the provisions of § 173, Title 14, Code of 1940, without explanation. It is sufficient to say that no exception was taken to the oral charge and, therefore, there is nothing presented here for review. Gurley v. State, 216 Ala. 342, 113 So. 391.

III. The homicide occurred on Saturday afternoon, December 18, 1954, about two o'clock in the City of Tuscaloosa at a small colored restaurant commonly called "The Stand". The Stand was a frame building. It faced west and consisted of the main eating room with a kitchen directly behind the main eating room. There was a counter which ran from the north wall toward the south part of this eating room. There was a distance of about 5 or 6 feet between the south wall of the building and the south end of the counter. In this space were kept empty drink bottles and cases holding drink bottles. Behind the counter was a space of some few feet and then there was the wall of the kitchen. There was a door in this wall which was approximately in the center of the building, separating the eating room from the kitchen. This door was of the old fashion saloon bat wing type.

Tendencies of the evidence showed that on Friday night, December 17th, George Wynn, the deceased, Rodgers Parker, the defendant, and others were playing a game called "skin". At one point in the game George Wynn lost but refused to accept his loss and kept money which the defendant had won. There was a dispute over this and the deceased taunted the defendant. The defendant refused to play any more and the deceased pulled a knife on the defendant and attempted to cut him. The defendant left and went to his home.

Later that night around midnight, the deceased came to Parker's home and kicked on the door and invited him to come out. The deceased was armed with a pistol at this time. Defendant did not go outside the house and Wynn left. The next afternoon was the next meeting between the defendant and the deceased. Tendencies of the evidence showed that the defendant was in the cafe when George Wynn came in. Wynn walked up to the counter, spoke to the woman who operated the place, turn-

ed around and went outside and then came back in. He then walked up to where the defendant was standing, turned and attempted to bump into him. The defendant jumped out of the way and Wynn went to the counter, walked around the counter and stooped around behind the counter. In this position only his head, shoulders and a portion of his upper body was visible to the defendant. While stooping down behind the counter Wynn reached into his bosom and made a pulling motion as he began to come up from behind the counter. The defendant then fired four times, twice after Wynn fell. Wynn slumped down behind the counter, lying with one portion of his head underneath the bat wing door leading to the kitchen. Parker fired a revolver and after the shooting was over, he emptied the used shells from the revolver on the floor of the cafe, reloaded and walked from the cafe to a colored pool room, called a taxi and went to the police station where he voluntarily surrendered himself and informed the officers of what had occurred.

Tendencies of the evidence further showed that after George Wynn had been shot that he was lying on his back with his hands stretched out and that a pistol was lying on the floor beside him approximately at his knee. This pistol was picked up by one Mary Evans Jones, who did not remain at the scene with the pistol until the police came. She took the pistol home with her and gave it to one Hill Jackson. The pistol was later given to certain officials of the police department.

Tendencies of the evidence further showed that George Wynn had a bad reputation and that he had a bad reputation for carrying a pistol. The tendencies of the evidence further showed that George Wynn made threats to kill the defendant Rodgers Parker and that Wynn had tried to cut Parker with a knife the night before.

■ (a). Error is predicated on the refusal of the court to allow certain testimony tending to show warnings or advice given by the witness to the appellant. For example, Willie Esther, a witness for the defendant was propounded the following question: "I will ask you if in that conversation you had with the defendant, Rodgers Parker, about 8:30 or 9:00 o'clock on the morning of the shooting, if you warned the defendant Rodgers Parker to watch himself and that Daddy Wynn was out after him?" The court allowed proof of threats made by the deceased against the defendant and that these threats were communicated to the defendant, but properly refused to allow testimony tending to show advice or warning given the defendant. Davis v. State, 216 Ala. 475, 113 So. 393.

■ (b). The court permitted questions showing generally that the appellant and the deceased became involved in an argument while gambling the night before the killing and that the deceased attacked the appellant with a knife. While the defendant could introduce evidence of such prior difficulty and to illustrate its general nature and gravity, could show that a weapon was used, the court refused to admit in evidence the details of the altercation. The ruling of the court was in accordance with the decisions of this court. Bryant v. State, 252 Ala. 153, 39 So.2d 657; Bowen v. State, 217 Ala. 574, 117 So. 204; Lambert v. State, 208 Ala. 42, 93 So. 708.

■ (c). In cross-examining one of the State's witnesses, the witness was asked whether the witness knew the reputation of the deceased for turbulence and violence. The witness testified that the deceased was a known gambler but that he did not know his reputation otherwise. Counsel then attempted to ask a number of questions concerning specific acts of the deceased. At the time the questions were asked concerning the reputation of the deceased, the evidence showed that the deceased and the appellant were on opposite sides of the room when the shooting occurred and it showed that the appellant shot the deceased twice after he fell. The testimony at that time further showed that

the two men had had a difficulty the night before and that the deceased had his hand in his shirt. In Sanders v. State, 242 Ala. 532, 7 So.2d 483, 484, this Court said:

"None of such evidence is admissible when offered by defendant, if he was the aggressor in the difficulty which then and there resulted in the killing. For under such circumstances self-defense is not available to him. And if he approached deceased for the purpose of bringing on the difficulty, such plea is unavailing. DeArman v. State, supra [71 Ala. 351].

"There is nothing to sustain a claim that defendant did not deliberately go home and get his gun and then go to a place where he would meet deceased for the purpose of renewing the difficulty with him, or that there was any reason to get his gun and go to meet him other than to renew the difficulty, or that he could not have avoided the difficulty after he saw deceased and saw him with a knife, as he says. Such a situation was analyzed in connection with a claim of self-defense in the case of Dunn v. State, 143 Ala. 67, 39 So. 147.

"Before such matter is admissible, there must be a tendency of other aspects of the evidence to show that defendant was without fault in bringing on the fatal rencounter: that he was in imminent peril, real or apparent, of loss of life or limb, that he could not avoid the difficulty or retreat without increasing his peril. And if an act was committed by him in the nature of a present provocation, he was not without fault. Unless there is a tendency of the evidence favorable to defendant on those questions, he cannot prove the bad character of deceased for turbulence, nor threats by him toward defendant, nor a prior difficulty with him, though of a serious nature. * * *"

When appellant attempted to bring out specific bad acts of the deceased in the aforesaid manner, not only was he attempting to do indirectly what he could not do directly, in other words prove bad character by specific acts, he was also attempting to show the bad character of the deceased prematurely. It had not been shown that the defendant did not have the opportunity to retreat. It was not shown that the appellant did nothing to provoke the deceased and it was not shown that the appellant could not have avoided the difficulty. We, therefore, consider that the court acted correctly in refusing to allow questions concerning specific acts of the deceased. Sanders v. State, supra.

(d) The defendant went to police headquarters in Tuscaloosa, Alabama, soon after the fatal shooting and surrendered himself. While at police headquarters the defendant made a statement concerning the circumstances of the shooting which was tape recorded. This statement was reduced to writing but was never shown to the defendant prior to the trial nor was it ever in any way authenticated by the defendant. The contents of this statement were admitted in evidence by testimony of Officer Scarborough as an oral confession of the defendant. The defendant took the stand and on direct examination testified to the circumstances of the shooting. The testimony given by the defendant in court differed materially from the prior statement given to Officer Scarborough at police headquarters. The solicitor on cross-examination proceeded to question the defendant in regard to the conflict between defendant's prior statement at police headquarters and the testimony of the defendant given on the stand. The solicitor used what appeared to be a written transcription of the defendant's oral statement for the purpose of cross-examining the defendant. Thereupon the defendant's attorney objected and requested the right to examine the paper before the defendant was questioned therefrom. This request to examine the paper was at first denied but the solicitor showed the writing to the defendant and to the defendant's attorney. While the solicitor was cross-examining the

defendant from the paper the defendant's attorney said: "We object to counsel reading this statement in evidence before the jury without offering it in evidence." The solicitor then offered the paper in evidence which was refused by the court, on objection of the defendant.

■■■ The appellant argues that it was reversible error for the court to permit the solicitor to cross-examine the defendant from a paper that purported to be a written transcription of a tape recorded statement made by the defendant to police soon after the fatal shooting.

An analysis of the cases relied on by the appellant shows that they are not controlling in the factual situation in the case at bar and that the trial court was not in error. The cases cited in brief by appellant control where the statement was written by the witness or was signed by the witness or it was prior sworn testimony of the witness. In these three situations if the statement is to be later introduced in evidence to impeach the witness, the statement must be first shown to the witness in order to allow the witness to refresh his memory and to explain any inconsistency. The writing used by the solicitor in the case at bar was not later admitted into evidence for the purpose of impeaching the witness nor was the paper authenticated in any manner by the defendant as being a prior statement made by him. He did not write the statement. He did not sign the statement nor was the alleged statement shown to be sworn testimony of the defendant previously given. The solicitor merely used the paper to refresh his own memory when propounding questions to the defendant on cross-examination. In other words, the character of the paper was nothing more than private notes of the solicitor.

The appellant relies upon the case of Wills v. State, 74 Ala. 21. The Wills case holds that the trial court ruled properly when it held that the entire affidavit or sworn testimony should be shown or read to the witness before the witness should be required to answer. In the Wills case the prior testimony which was used to question the witness was sworn to and signed by the witness and the contents of the paper were read to the jury later for impeachment purposes. In that case this court said:

"In each examination, the testimony related to one and the same altercation; and the testimony on the committing trial of Jane was sworn to and subscribed by the respective witness."

The following is a statement of the rule in the Wills case:

" 'A witness is not bound to answer to a matter reduced to writing by himself or another, and subscribed by him, until the writing has been produced and read or shown to him.' "

There appears to be no disposition in the instant case on the part of the State to deny the rule recognized in the Wills case. However, it is obvious that the factual situation in the case at bar does not warrant an application of the foregoing rule in the Wills case because the paper in the case at bar was not sworn testimony nor was it a signed statement given by the defendant nor was it later introduced in evidence for the purpose of impeaching the witness.

The case of Parke v. State, 48 Ala. 266, relied on by the appellant, is not applicable here. The Parke case holds that in a criminal case if the State relies upon a confession of the defendant to show his guilt, the defendant is entitled on cross-examination to bring out all that was said at the same time on the same subject. In the Parke case the trial court did not allow the defendant on cross-examination to bring out the rest that was said when the original confession was made. This court held that the action of the trial court was error. The Parke case, however, has no bearing on the present case because it does not concern a witness being denied the

right to examine a paper from which he is being cross-examined.

Manning v. State, 217 Ala. 357, 116 So. 360, 362, cited by the appellant, was reversed for several errors in the record. A careful reading of the decisions shows that none of these errors were adverse rulings of the trial court in regard to the examination of a witness from a prior statement without first showing the witness the alleged statement. The opinion states that there was no demand by the witness of the right of inspection. The witness in that case had been cross-examined from the transcribed notes of the official court reporter. The most that the Manning case says that is pertinent to the case at bar is as follows:

"If it was deemed necessary to refresh the recollection of the witness or to identify the document, time for inspection or examination of the same should have been asked and duly given by the court."

The appellant cites Kennedy v. State, 240 Ala. 89, 196 So. 884. The Kennedy case holds that in a criminal prosecution where the defendant admitted signing a paper for the investigator that it was reversible error for the trial court to permit the solicitor to cross-examine the defendant from the signed statement without allowing the defendant to first examine the statement when he asked to do so. The paper in the case at bar was not such a signed statement and therefore would not be governed by the Kennedy case.

The case of Floyd v. State, 82 Ala. 16, 2 So. 683, relied upon by the appellant, sets out the general rule that when a witness has made a statement in writing or signed the written statement, that the defendant must be shown the signed statement and allowed to refresh his memory before the witness should be allowed to answer questions relative to the written statement. It should be noted that this rule applies to an oral statement made by the witness and later reduced to writing and signed by the

witness. It does not apply to an oral statement reduced to writing and not signed by the witness. In the instant case the statement was an oral statement and was not signed by the witness.

We think any further analysis or statement concerning the Alabama cases relied on by the appellant is not necessary in view of the analyses which we have here made of the foregoing decisions.

A case similar to the case at bar is Bailey v. State, 24 Ala.App. 339, 135 So. 407. In that case it appeared that a witness for the defendant had given certain testimony before the grand jury which the solicitor had in his possession and used for the purpose of cross-examination of the witness. On appeal it was held that the prosecuting attorney had a right to refer to these notes in formulating questions on cross-examination of the adverse witness and that the trial court properly declined to require the solicitor to deliver the notes to the defendant's counsel for inspection. These notes included matter other than the testimony of the witness, but the paper in the Bailey case was of the same character as that in the instant case, because both papers purported to be an unsigned statement of the witness. There is no indication in the Bailey case that the notes were later introduced in evidence to impeach the witness. The trial court did not commit error in the Bailey case by ruling that the solicitor did not have to show the defendant's unauthenticated alleged prior statement to the defendant or to his attorney prior to questioning the defendant from it. It follows that the trial court should not be put in error in the instant case for a similar ruling. Vaughn v. State, 25 Ala.App. 204, 143 So. 211.

For a discussion of the problem under consideration we refer to the annotation in 156 A.L.R. 345 et seq. We have before us cases from other jurisdictions which in our judgment conform to what has been said.

In conclusion let us say that the various matters argued in brief by counsel have

been carefully considered and we believe that the judgment of the lower court is free from error and is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.

On Application for Rehearing

STAKELY, Justice.

Original opinion extended.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.