HARRIS, Judge.
Appellant was indicted for murder in the first degree. He was convicted of murder in the second degree and his punishment was fixed at 20 years imprisonment in the penitentiary. Prior to arraignment appellant was found to be indigent and the Court appointed experienced counsel to represent him. He pleaded not guilty. After sentence was imposed, he gave notice of appeal and requested a free transcript which request was granted. Trial counsel was appointed to represent him on this appeal.
Omitting the formal parts the indictment reads as follows:
“The Grand Jury of said County charge, that before the finding of this indictment, Larry Nicholson, alias Larry Donell Nich *153 olson, Alias Larry D. Nicholson, whose name is unknown to the Grand Jury other than as stated, unlawfully, and with malice aforethought, killed Yoncile Nicholson, also known as Yoncile Bonner, by stabbing her with a knife, against the peace and dignity of the State of Alabama.”
The evidence is undisputed that the deceased met her death as a result of a stab wound in her back while she was in bed with one of her young babies. Appellant did not testify and, of course, there was no denial that he stabbed the deceased.
There was no motion to exclude the State’s evidence; there was no motion for a new trial, and no exceptions were reserved to the Court’s oral charge to the jury. There was a request for the affirmative charge but under the evidence in this case this charge was properly refused.
The only question raised on this appeal is whether the proper predicate was laid for the admission into.evidence of a dying declaration made by the deceased just before she died. We think it only necessary to summarize the evidence to show that the trial court properly admitted the dying declaration into evidence and will condense our recital of the facts accordingly.
Voncile Nicholson was divorced from appellant and she moved back home to her mother’s house with her two babies, ages one and two, on June 27 or June 28, 1975, the date of her death. The deceased lived in a housing project in Florala, Alabama, with her mother, Eloise Hobbs Patrick, her stepfather, Officer Patrick of the Florala Police Department, her brother Jerome Lewis, age 10, her cousin, Wydell Milton, age 14, and her sister, Angela Pam Lewis, age 15, and her two babies.
Appellant spent the day of the murder at his ex-wife’s mother’s home with the family. He helped clean fish and they ate supper early in the afternoon as they were going to a carnival. After supper Mrs. Patrick washed dishes and left the dishes and knives on the drainboard to dry. Mrs. Patrick left a newly purchased butcher knife on the counter in the kitchen.
They returned home from the carnival around 10:00 or 10:30 that night. Mrs. Patrick went to her bedroom to lie down for a while before she had to go to Florala to pick up her husband who got off duty at midnight. The deceased went into another bedroom with her two babies to sleep. During this time appellant, Jerome, Wydell and Angela Pam watched television in the living room. Just before midnight Wydell went to Mrs. Patrick’s room to awaken her. She got up and turned on the light in Voncile’s bedroom to tell her that she was leaving to pick up her husband. Yoncile said, “all right” and she left the bedroom door cracked about six inches and left the bedroom light on. At this point she found appellant standing at the door next to the kitchen talking to Voncile, asking her to go over to his mother’s house with him. They were arguing because Voncile did not want to go with appellant.
Mrs. Patrick and Angela Pam left the house. Wydell went to the bathroom across from Voncile’s bedroom. He heard someone coming down the hall and enter Von-cile’s bedroom. Then he heard Larry and Voncile talking and Voncile said she would not go with Larry because her back was hurting. Then he heard Voncile scream, “O.K. O.K., Larry, I’m going.” Wydell then heard someone walk out of the bedroom back up the hall. The screaming had awakened Jerome who was asleep on the couch in the living room. He saw appellant run from the hall out the living room door.
Jerome walked down the hall toward Voncile’s bedroom and met Wydell coming out of the bathroom. They both went into Voncile’s bedroom. Voncile had a knife in her back. She was saying “Help me, help me. I’m dying. Look what Larry has done to me.”
Both Wydell and Jerome started out of the house to get the police but Jerome turned back and went to Voncile’s room and pulled the knife out of her back. He recognized the knife as his mother’s; it was a *154 butcher’s knife and she had not had it long. Voncile died before she got to the hospital as a result of the stab wound from the knife in her back.
Dr. W. D. Potter, a general practitioner at Florala, Alabama, testified that he got a call to come to the emergency room at the hospital and that the call came around 12:20 a. m. on June 28, 1975. That when he observed the deceased in the emergency room, she was already dead and he noticed there was a stab wound in the back and her body was covered with blood.
Mr. James L. Small, an Assistant Toxicologist with the Alabama State Department of Toxicology and Criminal Investigation, testified that he did a postmortem examination on the body of Voncile at the Armstrong Funeral Home in Florala. His qualifications were not questioned or disputed by the defense. He testified that he found one wound located on the left back of the body of the deceased and it was three-fourths inches in length. He examined the body internally to determine what organs were hit by this stab wound. He found a bloody path where the wound passed through the left lung into the esophagus, that is the tube that goes from the mouth to the stomach. He stated that in his opinion death was due to hemorrhage and trauma associated with the wound which penetrated vital organs. This was inflicted by a cutting instrument. He was asked if the cutting instrument that inflicted the wound could have been a butcher knife and he answered, “yes.”
In Shikles v. State, 31 Ala.App. 423, 18 So.2d 412, the Court held:
“No hard and fast general rule can be laid down to control the admissibility of dying declarations. The circumstances of each case must be considered — the condition of the person, as well as what he says in regard to approaching dissolution. Lewis v. State, 231 Ala. 211, 164 So. 92; Parker v. State, 165 Ala. 1, 8, 51 So. 260, 262. The Parker case approvingly quotes Professor Wigmore on the subject: ‘No rule can be laid down. The circumstances of each case will show whether the requisite consciousness existed; and it is a poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances.’ 2 Wigmore on Evidence, p. 1809, Section 1442.
“Nor is it an indispensable prerequisite to admissibility that declarant should state in haec verba that he is in extremis, that there is no hope of life, and that death is imminent, just so the judicial mind is fairly convinced by legally sufficient evidence after a careful consideration of all the circumstances that at the time such declarations were made such was the conviction of deceased. Lewis v. State, supra; Collins v. State, 27 Ala.App. 499, 176 So. 219.
“All the attendant circumstances tending to show the declarant’s state of mind, as his statements, nature of the wounds, his weakness, etc., may be looked to by the trial court in considering the predicate for admissibility. Ragland v. State, 238 Ala. 587, 192 So. 498. And that declarant was under a sense of impending dissolution may be inferred from his apparent condition, such as the nature of his injuries and evident danger. Wilson v. State, 28 Ala.App. 496, 188 So. 274.
“Nor is admissibility controlled by the length of the interval between the declarations and death, but by the declarant’s state of mind and his conviction that death is imminent. Titus v. State, 117 Ala. 16, 23 So. 77; Sowell v. State, 30 Ala.App. 18, 199 So. 900.”
In Marshall v. State, 219 Ala. 83, 121 So. 72, the Supreme Court said:
“We will first consider the declaration testified to by the doctor. Objection was made that it was hearsay. It was subject to that objection, unless it was admissible as a dying declaration. 1 R.C.L. 528. That objection therefore presents the question of its admissibility as a dying declaration. The first inquiry in that connection is whether, at the time the statement was made, deceased was conscious of impending death. The admissi *155 bility of such evidence is a question for the trial court, reviewable on appeal, if there is no sufficient evidence on which to admit the declaration as a dying declaration. Gilmer v. State, 181 Ala. 23, 61 So. 377; Justice v. State, 99 Ala. 180, 13 So. 658; Tarver v. State, 137 Ala. 29, 34 So. 627; 30 C.J. 268 (many other citations may be added). An oft-quoted expression from Wigmore on Evidence is to the effect that the circumstances of each case must show whether the requisite consciousness existed, and that it is a poor policy to disturb the ruling of the trial judge upon the meaning of those circumstances. Wigmore on Evidence, p. 1809, Section 1442; Evans v. State, 209 Ala. 563, 96 So. 923; Parker v. State, 165 Ala. 1, 51 So. 260; Parker v. State 10 Ala.App. 53, 65 So. 90; Smith v. State, 16 Ala.App. 47, 75 So. 192.
“It will be noted here that the witness stated, ‘She has got me,’ and then told the doctor it was unnecessary to take him to the hospital. In a few minutes after-wards he also told the witness Brown, ‘She finally got me.’ In the case of Parker v. State, 10 Ala.App. 53, 65 So. 90, supra, the deceased had said that defendant had ‘killed’ him. The Court of Appeals sustained the ruling of the trial court admitting the statement. Such was the substance of the evidence in Adkins v. State, 20 Ala.App. 278, 101 So. 779. In Evans v. State, supra, the statement was T think I am going to die.’ It was held a sufficient predicate. In Parker v. State, 165 Ala. 1, 51 So. 260, supra, the statement was, ‘The wound in my lung will kill me.’ Held sufficient. In Gilmer v. State, supra, this court said in substance that it is not necessary that deceased say in so many words that he is conscious of impending death; but it is sufficient if the judicial mind is convinced by legally sufficient evidence that deceased believed death impending, and held no hope of life. 1 Wharton Cr.Ev. (10th Ed.) 535, 555; Lewis v. State, 178 Ala. 26, 59 So. 577; Gurley v. State, 216 Ala. 342, 113 So. 391. Additional authorities could be cited to the same effect, almost without limit. The words, ‘She has got me,’ in common parlance, may be reasonably interpreted to be the equivalent of the words, ‘She has killed me.’ We think a sufficient predicate was shown for admitting the evidence as a dying declaration.”
In Crowell v. State, 233 Ala. 201, 171 So. 267, the evidence for the State tended to show that Sam Pilato, after being shot, was taken to the hospital, and at the hospital he declared, in the presence of his sons, Sam, Jr., Vince Pilato, and his son-in-law, Frank Damico, that the defendant shot him. Two of these witnesses testified that Sam Pilato stated at the time that, “I am just about gone,” or, “I am half dead.” The Court held that these statements were admissible as a dying declaration.
We hold in this case that the statement of Voncile was properly admitted into evidence as a dying declaration.
We have carefully searched the record for errors which injuriously affected the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.