Appellant was convicted of grand larceny. The property was described in the indictment as "one John Deere tractor, of the value of $15,000 the personal property of John Schaff." He was sentenced to imprisonment for six years.
The corpus delicti was unquestionably established by the testimony of John M. Schaff, the owner of the tractor, who said that it was stolen at Foley, in Baldwin County, on November 1, 1977.
The recovery of the stolen tractor was unquestionably established by the testimony of Baldwin County Deputy Sheriff Joe Rizzo, who testified that on February 23, 1978, he recovered the identical tractor at or near Grove Hill, Clarke County.
Willie Sheffield, called as a witness by the State, testified that about ten thirty on a morning between November 30, 1978, and January 1, 1979, defendant drove a truck that brought the particular tractor to his "place just south of Grove Hill." He said he paid sixty-five hundred dollars in cash. He said he did not pay Jerry Lee Stewart for the tractor but that he paid Ricky Day for it "in front of everybody else." He said he had never seen defendant before that occasion, on which he was introduced to him. He further testified that he also had been indicted for stealing the truck, but that he did not know that the truck was stolen at the time he purchased it.
After Sheffield had testified, the State rested, and defendant moved to exclude the evidence, which motion was overruled. Appellant insists that the only evidence against him at that time was the uncorroborated testimony of an accomplice. Even though Sheffield had been indicted for the same offense as appellant, that fact alone did not make him an accomplice.Bridges v. State, 52 Ala. App. 546, 295 So.2d 266, 271 (1974).
Although there was evidence indicating some guilt on the part of Sheffield of the crime of buying, receiving or concealing stolen property, there was none to indicate that he was a participant in the theft of the property. That one is guilty of buying stolen property does not make him an accomplice of the thief. Rice v. State, Ala.Cr.App., 365 So.2d 1007, cert. denied Ala., 365 So.2d 1010 (1978).
There was substantial evidence of defendant's guilt, and the court was not in *Page 216 
error in overruling defendant's motion to exclude the evidence.
After the court's denial of the motion to dismiss, defendant called Willie Sheffield as a witness, who then testified that the man who drove the truck with the tractor on it to Clarke County and whom he identified as Jerry Lee Stewart, looked some different from the way defendant looked in court. He said:
 "Yes, sir, I would say a little different. Hair was a little longer and maybe a little stringier, a little longer than it is now."
Ricky Day testified as a witness for the defendant that he had never been with Jerry Stewart at any time in Clarke County. He said he had known the defendant all of the life of the witness, that he had never been with Stewart "when he might have met Willie Sheffield." He said he had never sold Sheffield a tractor. He had also been indicted for stealing the particular tractor.
Bill Hinote, also a co-defendant as to the larceny of the tractor, testified that he knew both Willie Sheffield and Jerry Stewart, but that he had never gone with Jerry Stewart to Clarke County and that Jerry Stewart was not "involved in a sale of a tractor to Willie Sheffield." On cross-examination, Hinote was interrogated as to some purportedly self-contradictory statements by him, in part as follows:
 "Q. You never did that, you never went up there [Clarke County] and told him [Sheffield] that you were a John Deere representative?
"A. No, sir.
 "Q. Did you ever make a statement that you had gone up there and told him you were a John Deere factory representative?
"A. No, sir.
 "Q. Did you ever make a statement that you and Ricky Day had sold him a John Deere tractor? Do you recall making the statement to Joe Rizzo?
 "A. No, sir. Do I recall him telling me what to say. I recall him talking to me about it.
"Q. You didn't make the statement to him?
"A. No, sir.
 "Q. You didn't tell him that you went to Foley and looked at some tractors and took the key when the salesman wasn't looking out of a 2840 and later you and Jerry Stewart went to Clarke County and stole it?
"A. No, sir, did I sign that, sir?
"Q. No.
"THE COURT: You answer his question.
"MR. NORTON:
"Q. You say you never made that statement?
"A. No, sir."
The defendant took the stand and denied having any knowledge of and taking any part in the larceny of the tractor. He said he had never known Sheffield, but that he did know Ricky Day and Bill Hinote.
After defendant rested, the State recalled Officer Joe Rizzo. Thereafter, a large part of the record is devoted to the State's interrogation of the witness as to a lengthy statement in printed and written form, which became the State's Exhibit 1, which interrogation was interspersed by objections by defendant and rulings of the court, which resulted in the admission, over defendant's objection, of State's Exhibit 1. State's Exhibit 1 consists of seven pages of printed and handwritten material, the printed material on each page being the same and consists of the caption "VOLUNTARY STATEMENT" and what purports to be the form used in taking confessions or incriminating statements from an accused, with an acknowledgment in detail of its voluntary character and a waiver of the right to talk with an attorney. Some of the blank spaces in such statement are filled in with the time thereof, February 28, 1978, the name of Bill Hinote as the one making the statement, and the person and office of the one to whom the statement was made, Deputy Sheriff Joe Rizzo, who signed each page of the statement as a witness. On each page of the statement is a place for the "Signature of person giving voluntary *Page 217 
statement," but thereunder in each instance is the handwritten statement, "Refused to sign." In the interrogation of Officer Rizzo it was shown that he, by his own hand, placed in the exhibit all of the handwritten material therein, that Hinote consistently refused to sign, but that Hinote voluntarily, and after appropriate warning, gave Officer Rizzo an oral statement in question (by Officer Rizzo) and answer (by Hinote) form, which the witness said he recorded in State's Exhibit 1 at the time, as the statement of Hinote. The record is in pertinent part as follows:
 "Q. Did you record that statement as it was made to you?
"A. Yes.
 "MR. GRANADE: Your Honor, we object to this. This is simply irrelevant in this case, completely irrelevant, it couldn't have anything to do with Jerry Stewart's guilt or innocence, this statement.
 "MR. NORTON: It was to impeach the credibility of one of the Defendant's witnesses."
The court then excused the jury. While the jury was out a two-page colloquy of the court and attorneys for the respective parties occurred, during which the court overruled some objections by defendant, but indicated that they should proceed in the presence of the jury with the interrogation of Officer Rizzo and that it would consider any further objections by defendant as to the statement of Hinote.
Upon resumption of the testimony of Officer Rizzo and some further testimony by him as to the time and place and circumstances the statement by Hinote was made, the record shows:
"Q. Did you sign each and every page to it?
"A. Yes, sir.
"Q. We would offer this as State's Exhibit No. 1.
"MR. GRANADE: Same objection.
 "THE COURT: Are you objecting to it on the same grounds that you previously stated?
 "MR. GRANADE: We are also objecting to the introduction on the best evidence rule.
"THE COURT: Any other grounds?
 "MR. GRANADE: As well as the grounds we set out earlier.
 "THE COURT: Overrule the objection. It is ordered admitted."
We find no authority or justification for the admission in evidence of State's Exhibit 1. The correct trail was blazed inVastbinder v. Metcalf, 3 Ala. 100 (1841), clearly marked inAcklen's Executor v. Hickman, 63 Ala. 494 (1879), and has since been firmly established in Alabama. Sovereign Camp W.O.W. v.Screws, 218 Ala. 599, 119 So. 644 (1928); Parsons v. State,251 Ala. 467, 38 So.2d 209 (1948); Bennefield v. State, 281 Ala. 283, 202 So.2d 55 (1967). In Acklen's Executor, supra, at 498, it is stated:
 "The law recognizes the right of a witness to consult memoranda in aid of his recollection under two conditions: First, when, after examining a memorandum made by himself, or known and recognized by him as stating the facts truly, his memory is thereby so refreshed that he can testify, as a matter of independent recollection, to facts pertinent to the issue. In cases of this class, the witness testifies to what he asserts are facts within his own knowledge; and the only distinguishing difference between testimony thus given, and ordinary evidence of facts, is that the witness, by invoking the assistance of the memorandum, admits that, without such assistance, his recollection of the transaction he testified to, had become more or less obscured. In cases falling within this class, the memorandum is not thereby made evidence in the cause, and its contents are not made known to the jury, unless opposing counsel call out the same on cross-examination. This he may do, for the purpose of testing its sufficiency to revive a faded or fading recollection, if for no other reason. "In the second class are embraced cases in which the witness, after examining the memorandum, can not testify to an existing knowledge of the fact, independent of *Page 218 
the memorandum. In other words, cases in which the memorandum fails to refresh and revive the recollection, and thus constitute present knowledge. If the evidence of knowledge proceed no further than this, neither the memorandum, nor the testimony of the witness, can go before the jury. If, however, the witness go further, and testify that, at or about the time the memorandum was made, he knew its contents, and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equivalent of a present, positive statement of the witness, affirming the truth of the contents of the memorandum. — 1 Greenl. Ev. §§ 436-7; Bondurant v. Bank, 7 Ala. 830."
The record is clear that the only valid reason for the use of State's Exhibit 1 was for the purpose of the witness' refreshing his recollection as to what Hinote had told him, which the State succeeded in showing in its effort to impeach Hinote as a witness. There is no indication whatever that the witness Officer Rizzo was not able from his own memory, after such memory had been refreshed by the exhibit, to testify as to what Hinote had said. In this circumstance, the document was not admissible in evidence. The difference between the circumstances under which the document is admissible and those under which it is not, as stated in the cases cited, is fully considered under the topic of Present Recollection Revived asdistinguished from Past Recollection Recorded and topic PastRecollection Recorded, in Gamble, McElroy's Alabama Evidence, § 116.01, § 116.03 (1977) respectively.
A more difficult question is whether defendant assigned appropriate grounds for his recurring objections to the offer of State's Exhibit 1 in evidence and the questions leading to the offer. According to Bondurant v. Bank, supra, the document "is but hearsay," but hearsay was not expressly and specifically assigned as a ground of the objections. There is little more than the general ground of the objections that were made. Even so, we feel that, as circumstances of the presentation of evidence were themselves so involved and came as such a surprise to defendant's counsel, who evidently had not seen the exhibit prior to its production in open court during the testimony of Officer Rizzo and who first thought it was not in the handwriting of Officer Rizzo, and as there was basis for uncertainty as to the purpose of the evidence, justice would be served, and the rationale of applicable principles of law would not be violated, by treating the objections made by defendant as sufficient to entitle appellant to a review of the question whether the admission of the document constitutes prejudicial error. We think the evidence meets some of the accepted tests of sufficiency for a review of its admissibility, such as, that it is illegal and irrelevant on its face (McClellan v. State, 117 Ala. 140, 23 So. 653), is patently objectionable and illegal (Downey v. State, 115 Ala. 108,22 So. 479) and is patently and palpably inadmissible for any purpose (Washington v. State, 106 Ala. 58, 17 So. 546), and was incapable of being made admissible by other evidence. It clearly meets the following test, found after a comprehensive analysis of the cases on the subject:
 "Properly interpreted, the most popular and current test would seem to be as follows: A general objection if overruled is sufficient to present for review on appeal the point that the evidence admitted was violative of a specific rule if such evidence is illegal, and according to the common probabilities of experience, there is a fair likelihood that such evidence cannot be made legal by the introduction of other evidence or by otherwise framing the inquiry made to the witness." Gamble, McElroy's Alabama Evidence § 426.01 (10), pp. 801-802 (1977)
We should note also that neither party on appeal endeavors to make any point about the sufficiency of the objection. The issue between them is as to the admissibility of the evidence. The only authority cited by appellee on the point is Parker v.State, 266 Ala. 63, 94 So.2d 209 (1957). The case is inapposite. The paper there involved was *Page 219 
not admitted in evidence. At 266 Ala. 69, at 94 So.2d 214, it is stated:
 ". . . The solicitor then offered the paper in evidence which was refused by the court, on objection of the defendant. "The appellant argues that it was reversible error for the court to permit the solicitor to cross-examine the defendant from a paper that purported to be a written transcription of a tape recorded statement made by the defendant to police soon after the fatal shooting.
 ". . . The solicitor merely used the paper to refresh his own memory when propounding questions to the defendant on cross-examination. In other words, the character of the paper was nothing more than private notes of the solicitor."
As a part of the court's oral charge it said:
 "Insofar as proving the material averments of the indictment, if you find from the evidence that the Defendant was in the unexplained possession of property recently the subject of a theft then the State has met its burden and has, in that regard, proven its case."
At the conclusion of the court's oral charge, the court called upon the parties for exceptions, and the following occurred:
 "MR. CROSBY: I would like to object to part of the oral charge, in substance it is this, the charge was that if you find the property was in the Defendant's possession and then the State has met the burden of proof, that was the substance of the charge. We object to this on two grounds. Number 1, this is not the law, this is insufficient to prove the State's case in the larceny case. Number 2, this charge was prejudicial regarding the law of grand larceny.
 "MR. GRANADE: One thing, Judge. You mentioned in your charge that unexplained possession means the State has proved its case. We would request that be clarified to the jury.
 "THE COURT: Are you objecting to that portion of the charge in which the Court said that evidence of unexplained possession of recently stolen property constitutes a prima facie case?
 "MR. GRANADE: I believe the Court stated that the State has proved its case.
"THE COURT: All right. Then you have your exception."
In endeavoring to uphold the portion of the court's oral charge to which an exception was taken, diligent counsel for appellee urge that the statement is to be taken into consideration in connection with all of the court's oral charge which, inter alia, contained correct, emphatic instructions as to the presumption of innocence, the nature and extent of the burden of proof upon the State, "to convince each member of the Jury beyond a reasonable doubt as to the truth of the material averments contained in the indictment." Nevertheless, there still remained in the oral charge an incorrect instruction, to which an exception was taken and which was left to go to the jury unmodified. The instruction is even stronger in favor of the state than that which was held erroneous by Judge Tyson inBuckles v. State, 50 Ala. App. 548, 280 So.2d 810, aff'd on rehearing, 291 Ala. 359, 280 So.2d 823 in overruling 291 Ala. 352, 280 So.2d 814.
In determining whether a particular portion of a court's oral charge to which an exception is duly reserved constitutes reversible error, we are mindful of the established rule of construction that such portion is not to be isolated from the rest of the charge and that all parts of the instructions of the court must be considered together. Gosa v. State, 273 Ala. 346, 139 So.2d 321 (1962); Wright v. State, 269 Ala. 131,111 So.2d 596 (1959); Van Antwerp v. State, Ala.Cr.App.,358 So.2d 782, cert. denied, Ala., 358 So.2d 791 (1978). We look to the entire charge and do not find therein any correction or qualification of the erroneous instruction. We quote it again, this time in the context of the immediately preceding and the immediately succeeding portions of the court's oral charge:
 ". . . In this case, as in all other cases, where he has plead not guilty, the burden of proof is upon the State to convince each member of the Jury beyond *Page 220 
a reasonable doubt as to the truth of the material averments contained in the indictment.
 "Now those material averments are these. That the property belonged to or was in the legal possession of another and that the Defendant removed it intending to deprive the rightful owner of its use.
 "Insofar as proving the material averments of the indictment if you find from the evidence that the Defendant was in the unexplained possession of property recently the subject of a theft then the State has met its burden and has, in that regard, proven its case. The term reasonable doubt means a doubt which has some good reason for arising out of the evidence and such a doubt as you are able to find a reason for having. It means an actual and substantial doubt growing out of some unsatisfactory nature of the evidence in the case. . . ."
There is nothing in the quoted context or in any other portion of the court's charge that negates or ameliorates the erroneous instruction as to the conclusive effect of the unexplained possession of property recently stolen.
We have no difficulty in determining that the error as to the admission in evidence of the lengthy statement of Hinote as "recorded" by Officer Rizzo and the part of the oral charge of the court as to the effect of the unexplained possession of property recently stolen, when considered together and when considered separately, constituted error of a harmful nature and of a probably harmful result. Notwithstanding the sufficiency of the evidence to support a verdict, the only substantive evidence against defendant was that of Sheffield who, although not an accomplice of appellant, was not a witness whose credibility was above question.
For the errors indicated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.