A jury found defendant (appellant) guilty of robbery in the first degree as charged in an indictment which, omitting the formal parts, charged the following:
 "Terry Wayne McLester, whose name is to the Grand Jury otherwise unknown, *Page 287 
did in the course of committing a theft of Fifty-five dollars in the lawful currency of the United States of America, the exact denominations of which and a better description of which, are to the Grand Jury otherwise unknown, of the value of, to-wit: $55.00, the property of Sunshine, Jr. Food Stores, Inc., a corporation, used force against the person of Ruth Lewis, with the intent to overcome her physical resistance or physical power of resistance, or did threaten the imminent use of force against the person of Ruth Lewis, with intent to compel acquiescence to the taking or escaping with the property, while the said Terry Wayne McLester was armed with a deadly weapon, to-wit: a knife, in violation of 13A-8-41 of the Code of Alabama."
According to the undisputed evidence, which included the testimony of the alleged victim, the following occurred:
 "[The defendant] Came over the counter, had his hand in his pocket and had a knife that was almost half way opened at that time. He brought the knife out and I said sir — when he came over the counter, I said sir, you are going to have to get out of here or out of this area. Those were not my words, but he said yeah, I am going to leave. And, I said sir, you are going to have to leave. And he said yeah, we are going to leave, we are going to leave together.
"Q. Where was the knife at this time?
"A. It was pointed at my side.
"Q. He had it at your side?
"A. Yes.
 "Q. He told you that you were going to leave together? Is that correct?
"A. Yes.
"Q. What if anything did you do then?
 "A. He took me by the arm, headed me to the cash register.
"Q. Did he tell you anything about the cash register?
"A. He said give me all the money.
 "Q. Approximately how much money was in the cash register at that time?
 "A. About fifty-five dollars, maybe a little more than that.
 "Q. And, that was the property of the store there, the Sunshine Jr. Food Stores Inc.
"A. Yes, it was.
 "Q. All right. He led you to the cash register. Did he say anything about what would happen to you or anything like that?
 "A. He said don't make me hurt you, is what he said right then."
In testifying further, the witness said that instead of opening the cash register she "hit the wrong button and turned the signal box off" and about that time another person was coming in the store, who asked for cigarettes, and the defendant left the store "running."
Alabama Criminal Code, § 13A-8-41, provides in pertinent part:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
". . ."
Section 13A-8-43 provides:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
 "(b) Robbery in the third degree is a Class C felony."
Section 13A-8-40 (b) provides:
 "`IN THE COURSE OF COMMITTING A THEFT' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission."
A sentencing hearing was conducted after appropriate notice that the State was *Page 288 
invoking the provisions of the Habitual Offender Act. At the hearing there was undisputed evidence that defendant had been previously, on July 13, 1979, convicted of burglary in more than three separate cases.
Alabama Criminal Code, § 13A-8-41 (c), states that robbery in the first degree is a Class A felony. Section 13A-5-9 (c)(3) provides that where it is shown that a criminal defendant has been previously convicted of any three felonies and after such conviction is convicted of a Class A felony, "he must be punished by imprisonment for life without parole." The issues presented by appellant, as stated in his brief, are as follows:
"I
 "DID THE TRIAL COURT'S ERRONEOUS REFERENCES TO THE `TESTIMONY FOR THE DEFENDANT' (TWICE) AND THE TESTIMONY `OFFERED BY THE DEFENDANT' (ONCE) DURING ITS ORAL CHARGE, MADE MERO MOTU, CONSTITUTE REVERSIBLE ERROR, WHERE PROPERLY OBJECTED TO BY DEFENSE COUNSEL, WHEN (1) THE DEFENDANT DID NOT TESTIFY, AND (2) THE DEFENDANT DID NOT PRESENT ANY TESTIMONY FROM ANY OTHER SOURCE, WHERE NO CURATIVE INSTRUCTION WAS POSSIBLE.'
"II
 "UNDER THE PARTICULAR FACTS AND CIRCUMSTANCES OF THIS CASE, DID APPLICATION OF THE HABITUAL OFFENDER ACT VIOLATE THE UNITED STATES AND ALABAMA CONSTITUTIONS?
"III
 "DID THE STATE ADEQUATELY PROVE A MIRANDA WARNING BEFORE INTRODUCTION INTO EVIDENCE OF A KNIFE WHICH WAS THE FRUIT OF A CUSTODIAL INTERROGATION OF THE DEFENDANT?"
We proceed to a consideration of the issues in the order of their presentation.
 I
The defendant did not testify in the case, and the defense rested immediately following the case presented by the State. The contention of appellant is directed to portions of the court's oral charge as follows:
 ". . . And, if after you have weighed and considered all the evidence in the case, that for the State of Alabama and that for the Defendant, Terry Wayne McLester, if there remains in your mind a doubt, a reasonable doubt of this Defendant's guilt, then, of course, he would be entitled to the benefit of that doubt.
". . .
 ". . . But, it does mean after you have weighed and considered all the evidence, all the testimony in the case, that for the State of Alabama and that for the Defendant, if it is then your fixed conviction, your fixed opinion and judgment that the Defendant is guilty, based upon the evidence, then, within the meaning of our law, you are convinced beyond a reasonable doubt.
". . .
 "Now, ladies and gentlemen of the jury, after you have weighed and considered all the testimony in this case, that for the State, that offered by the State, and that offered by the Defendant, Terry Wayne McLester, of course, you must write your verdict in this case."
In objecting and excepting to the court's oral charge, the following occurred:
 "MR. BAXLEY: Your Honor, we respectfully object to and except to two portions of the Court's Oral Charge wherein the Court charged the jury, was charging the jury about reasonable doubt. And each time the Court said that after they had weighed and considered all the evidence, that for the State and that for the Defendant, the second time, the Court said after the Jury weighed and considered all the evidence for the State and that offered by the Defendant, Terry *Page 289 
Wayne McLester, we think that by adding in on both occasions the phrase: And that for the Defendant, on one occasion and: That offered by the Defendant, Terry Wayne McLester, on the other occasion, is undue emphasis on the fact that the Defendant did not offer any testimony, and, therefore, is misleading to the Jury. And, they may think the Jury [defendant?] is under some affirmative duty to offer such. And, we respectfully object to and except to that portion of the Court's Oral Charge.
 "THE COURT: Okay. Well, I will tell you the truth, it is innocent if I did. Because, I had forgotten he didn't offer any testimony, to tell you the truth. I am just used to referring to the State's Evidence and the Defendant's. All right. You can bring the —
 "MR. SORRELLS: Your Honor, before we bring them back, may I ask if he is asking for any curative instructions in this case?
"THE COURT: No. No.
 "MR. SORRELLS: Okay, sir. I wanted to put that in the Record.
 "THE COURT: Okay. You can bring the Jury back. I think it is okay, even if he didn't testify, I don't think there is anything wrong."
Although some of the language in portions of the oral charge to which exceptions were taken by defendant were not appropriate in a case in which defendant did not testify, and no witness testified in his behalf, we do not agree with appellant's argument that such portions of the charge, whether considered together or considered separately, were erroneous to the prejudice of defendant. It is to be noted that in such portions of the oral charge no distinction was drawn between "testimony" and "evidence." Although no witness was called on behalf of defendant and three witnesses were called on behalf of the State, defendant's able counsel did not take their testimony lying down. He intensively and expertly cross-examined them and thereby obtained from them evidence that could have caused some jurors to have some doubt as to the accuracy of their testimony on direct examination. We find nothing in any of the cases cited by appellant in support of the position. He relies largely upon Stewart v. State, Ala.Cr.App., 381 So.2d 214, cert. denied, 381 So.2d 220 (1980), and Reed v. State, 47 Ala. App. 617, 259 So.2d 304 (1972). InStewart v. State, a grand larceny case, the instruction, as quoted at 381 So.2d 220, was, "Insofar as proving the material averments of the indictment if you find from the evidence that the Defendant was in the unexplained possession of property recently the subject of a theft then the State has met its burden and has, in that regard, proven its case. . . ." In Reedv. State, supra, the trial court instructed the jury in part as follows:
 "If you are convinced beyond all reasonable doubt by the evidence that the property was stolen and further that the defendant was in possession of the property then the defendant has the burden of going forward with the evidence and explaining his possession of the property."
 II
Appellant's argument under Issue II is in two parts. He says that defendant's "seven prior burglary convictions should have been treated as a single offense." He introduced evidence on the sentencing hearing to the effect that he was twenty-two years of age and intoxicated when he "entered the Northside Mall in Dothan by kicking in the door at Martin Shoe Store, and proceeded to break out the windows of other retail stores called The Music Shop, The Hitching Post, The Aesthete, Sports World, Inc., Glawson-Pierce Men's Store and J. Kilgores" and thereafter pleaded guilty of burglary in the second degree and was adjudged guilty thereof in seven separate cases in the Circuit Court of Houston County. He argues that the instant case is distinguishable from Seritt v. State, Ala.Cr.App.,401 So.2d 248, cert. denied, 401 So.2d 251 (1981), in which it was held that defendant's four separate sentences for violating the Alabama Uniform Controlled Substances Act, each entered upon guilty pleas *Page 290 
on the same day with the advice of counsel, constituted four separate "convictions" for sentencing under the Habitual Offender Act — even though defense counsel asserted that all four were "growing out of a common event or occurrence as one offense." He argues alternatively that Seritt v. State should be reconsidered. We fail to see a distinguishing difference between the instant case and Seritt, supra, and we adhere to what was held therein.
Appellant's argument that mandatory punishment by imprisonment for life without parole under the Alabama Criminal Code, § 13A-5-9 (c), is a violation of the constitutional prohibition against cruel and unusual punishment has been recently answered adversely to his contention in Dozier v.State, Ala.Cr.App. 415 So.2d 3, 5 (1982), as follows:
 "Appellant also alleges the statute as applied to him is unconstitutional in that life without parole is cruel and unusual punishment in that the sentence is excessive in light of the underlying prior convictions. This argument also is without merit. Watson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied 392 So.2d 1280 (Ala. 1981); Thompson v. State, 405 So.2d 717 (Ala.Cr.App.), cert. denied, 405 So.2d 721 (1981)."
 III
This issue pertains to the introduction in evidence of a knife that was found by Military Policeman John Turner, who had arrested defendant for DUI at Fort Rucker, prior to having any information that he was wanted as a suspect in the instant robbery case. A search of his automobile, which had been secured after defendant's arrest, was made about forty-five minutes after defendant's arrest and incarceration and after Officer Turner had learned that defendant was a suspect in an alleged robbery in which a knife had been used. The question now presented was presented by an oral motion to suppress evidence of the knife found in defendant's automobile by Officer Turner when he returned to the automobile after obtaining defendant's consent to search the automobile. The court overruled defendant's motion to suppress after hearing the testimony of Officer Turner and Officer William A. Quinn, a reserve police officer for the city of Daleville, both called as witnesses for the defendant on the hearing of the motion to suppress.
In appellee's brief as to Issue III, appellee takes the position that when the knife was offered in evidence on the trial, the objection of defendant was not adequate. In appellant's reply brief, he shows, as his original brief discloses, that he was challenging the ruling of the court on the motion to suppress and was relying upon Thomas v. State, Ala.Cr.App., 370 So.2d 1066, cert. denied, 370 So.2d 1070
(1979), in which it was held at 370 So.2d 1070 as follows:
 "The simple question, `did you read the defendant his rights as per the Miranda decision,' does not indicate whether the rights were read before or after questioning, whether the defendant understood the rights and whether he made an intelligent waiver of those rights. Even in cases where officers have attempted to give a detailed Miranda warning, key elements have been left out or misstated, which required reversal. Square v. State, 283 Ala. 548, 219 So.2d 377 (1968)."
The criticism directed at the admission in evidence of the knife in the instant case is materially different from the criticism upheld by the court in Thomas v. State, in concluding that the judgment therein should be reversed by reason of error of the court in the admission in evidence over defendant's objection, of an inculpatory statement by defendant, without his being advised of his constitutional rights, including those covered by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). Appellant says in his brief herein that "the officer in question could only state" the following:
 "That he had the right to remain silent. The rights as they are read. I can't quote them verbatim. I always have a form that I read them verbatim to the witness while he has one that he can read along with you." *Page 291 
In addition to what Officer Turner testified as quoted above, he testified:
 "Q. Did you ask him to sign — before he gave you that consent, did you advise him of his rights?
"A. Yes, sir. He had been advised his rights twice.
"Q. By whom?
 "A. I advised him of his rights and the Daleville police also advised him of his rights.
". . .
 "Q. Did you ask him to sign something to the effect that he had been advised of these rights?
"A. Yes.
"Q. Did he sign anything?
"A. Yes, sir.
"Q. Do you have that?
 "A. I don't have one in my possession. It is with the case file.
"Q. You don't have that with you?
"A. No, sir. I'm not required to keep it.
 "Q. Did you advise him of his rights the time that you had him under arrest for DUI or some later point?
 "A. He was advised of his rights before being transported to the Daleville Police Department."
The testimony of Officer Quinn on the motion to suppress furnished some support to appellant's contention, but it does not nullify the testimony of Officer Turner to the effect that defendant was fully advised of his constitutional rights and voluntarily and intelligently gave his consent to a search of his automobile. Although testifying in effect that he never heard Officer Turner explain to the defendant his constitutional rights and never heard him obtain the consent of defendant to search defendant's automobile, on cross-examination by the State, Officer Quinn stated:
 "Q. Let me ask you this, Mr. Quinn. What you are saying is you don't know if that happened or not? Is that correct?
"A. Yes, sir.
 "Q. And it could have happened, but you don't know about it?
"A. Right.
". . .
 "Q. So, you are not saying that it didn't happen, you are just saying that you don't know if it happened? Is that right?
"A. That is right."
The court was not in error in denying defendant's motion to suppress.
Our consideration of the issues raised by appellant convinces us that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.