[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 872 
The appellant, Terry Wayne McLester, appeals the trial court's dismissal of his petition for writ of habeas corpus, or in the alternative, petition for writ of error coram nobis. Among the allegations in his petition, McLester alleged that his sentence of life without the possibility of parole is violative of the eighth amendment proscription against cruel and unusual punishment, for it is disproportionate to the crime committed and it is the result of the application of the Alabama Habitual Felony Offender Act in which seven prior felony convictions arising out of a single occurrence were considered as seven separate felonies rather than as a single offense.
These allegations were supported by the following facts either alleged in McLester's petition or elicited at a hearing on the petition's merits:
McLester was indicted and convicted on November 17, 1981, for the offense of robbery in the first degree. Regarding this offense, McLester testified that, prior to the robbery, he had drunk about a case of beer and probably smoked "a couple of joints;" however, he did not testify at his robbery trial. He was on work release at the time of the robbery.
For this conviction of first degree robbery, McLester was sentenced to life imprisonment without the possibility of parole. At the time, he was twenty-five years old. His sentence was pursuant to the mandate of the Habitual Felony Offender Act, for McLester had pleaded guilty in 1979 to seven charges of burglary in the second degree. These convictions are the consequences of a common event in which McLester broke into a mall and then proceeded to break into several stores. McLester claimed that between about dark and after midnight when he broke into the mall, he had drunk probably a bottle of whiskey, smoked "about twenty joints", and snorted three or four grams of cocaine.
 I
McLester first argues that the trial court erred in denying his petition on the ground that his sentence is so disproportionate to the offense committed that it violates the eighth amendment's prohibition against cruel and unusual punishment.[1] He claims that the disproportionate sentence is a result of the trial court's treatment of the seven felony convictions arising out of one continuous action and entered upon guilty pleas on the same day as seven separate convictions rather than as a single conviction. *Page 873 
These assertions were decided adversely to McLester in the direct appeal of his conviction for robbery in the first degree and his sentence of imprisonment for life without possibility of parole. In McLester v. State, 423 So.2d 286 (Ala.Cr.App. 1982), the court relied on Seritt v. State, 401 So.2d 248
(Ala.Cr.App.), cert. denied, 401 So.2d 251 (Ala. 1981), in holding that McLester's seven convictions arising out of a common occurrence properly constituted seven separate convictions for the implementation of the Habitual Felony Offender Act. 423 So.2d at 289-90. The court further ruled that McLester's mandatory punishment of imprisonment for life without parole does not constitute cruel and unusual punishment, for it is not excessive in light of the underlying prior convictions. 423 So.2d at 290.
McLester urges our reconsideration of these issues in light of the recent United States Supreme Court opinion of Solem v.Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), in which the Supreme Court explicitly held that a noncapital punishment could be so excessive in length as to be disproportionate to the defendant's crime, thus violating the eighth amendment. Helm's punishment pursuant to a recidivist statute was imprisonment for life without the possibility of parole. This enhanced punishment was authorized pursuant to six prior offenses which involved nonviolent property crimes and were alcohol-related and to a subsequent conviction for uttering a "no-account" check in the amount of $100. The majority (five to four) held "that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 103 S.Ct. at 3009. The Court set forth the following objective factors to be weighed by a court in its proportionality analysis: (i) an assessment of the gravity of the offense and the harshness of the penalty; (ii) a comparison of the punishment with the sentences imposed on other convicted defendants in the same jurisdiction; and (iii) a comparison of the punishment with the sentences imposed for the commission of the same crime in other jurisdictions. 103 S.Ct. at 3011.
However, even in stressing the general rule and the test to be followed in ascertaining whether a sentence bears a reasonable relationship to the crime, the Court indicated its intention that the application of this proportionality analysis be limited, for it stated the issue in Solem as an extremely narrow one: "[W]hether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh nonviolentfelony." 103 S.Ct. at 3004 (emphasis added).[2] In observing the Court's expression of its narrow holding in Solem, we have declined to apply the Solem test if the "triggering" offense is one which the legislature has classed as a serious "life-endangering" crime, such as robbery in the first degree.Casey v. State, 456 So.2d 1161 (Ala.Cr.App. 1984).[3] Unless *Page 874 
the factual situation before the appellate court presents a "triggering offense" which is one of the less serious offenses,Solem is "factually different and therefore inapposite." Serittv. Alabama, 731 F.2d 728, 732 (11th Cir. 1984). Because McLester's "triggering offense" is first degree robbery, theSolem analysis is not applicable.
In further contrasting the instant facts with those in Solem, we recognize that McLester's sentence was mandated by the Alabama Habitual Felony Offender Act, while Helm's life sentence was merely authorized as within the statutory limitation, rather than mandated. In Solem, the length of the sentence actually imposed was within the trial court's discretion, while, in the instant case, it was mandated by legislative act. Thus, the avoidance of judicial intrusion into the legislative mandate as advanced by the United States Supreme Court in Rummel v. Estelle, 445 U.S. 263, 274-75,279-85 n. 27, 100 S.Ct. 1133, 1139, 1142-45 n. 27,63 L.Ed.2d 382 (1979), is of more appropriate significance in the instant case than it was in Solem. See Case Comment, Solem v.Helm: Extension of Eighth Amendment Proportionality Review toNoncapital Punishment, 69 Iowa L.Rev. 775, 783, 793-94 (1984). Accordingly, we reiterate the Rummel Court's proposal that "the length of the sentence actually imposed is purely a matter of legislative prerogative." 445 U.S. at 274, 100 S.Ct. at 1139. A legislatively mandated sentence carries a presumption of validity, because the legislature presumably considered proportionality objectives when it defined the offense and set the corresponding penalty; Solem provides constitutional protection in the event the legislative standards fail. Case Comment, supra, at 793-94. In regard to McLester's sentence, we are given no reason why the Alabama legislature's definite expression of the public interest in setting the punishment for robbery in the first degree should not be given the substantial deference recognized by the Rummel Court and reiterated by theSolem Court when it stated: "Reviewing courts, of course should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. . . ." 103 S.Ct. at 3009. Seealso id. at n. 16.
Aside from these factual distinctions limiting the observation of the Solem proportionality review, the Court indicated that its opinion should not be construed to hold that extensive appellate review of all prison sentences is constitutionally mandated, for the Court noted:
 "[W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."
Solem, 103 S.Ct. at 3009, n. 16. Likewise, as observed by theRummel Court, a proportionality principle would come into play in an "extreme example" such as "if a legislature made overtime parking a felony punishable by life imprisonment."445 U.S. at 274, n. 11, 100 S.Ct. at 1139, n. 11. Thus, "[i]n many cases, an eighth amendment claim attacking a prison sentence will require only the most cursory review by a court before a finding of constitutionality is made." Note, Solem v. Helm:Extending Judicial Review Under the Cruel and UnusualPunishments Clause to Require "Proportionality" of PrisonSentences, 33 Cath.U.L.Rev. 479, 514 (1984). See also Moreno v.Estelle, 717 F.2d 171, 179, 180 *Page 875 
n. 10 (5th Cir. 1983) (recognizing that a cursory analysis perSolem is required unless Rummel applies and controls those facts not clearly distinguishable from the Rummel facts).
The instant case is not an "extreme example" requiring us to engage in an extended analysis of McLester's eighth amendment claim. On numerous occasions, this court has upheld the mandatory sentence of life without parole for a conviction for robbery in the first degree after three prior felony convictions against an attack that said sentence constitutes cruel and unusual punishment under Solem v. Helm. E.g., Caseyv. State, supra; Thomas v. State, 447 So.2d 203 (Ala.Cr.App. 1984); Wabbington v. State, 446 So.2d 665 (Ala.Cr.App. 1983);Robertson v. State, 442 So.2d 162 (Ala.Cr.App. 1983).
Furthermore, even if we disregard the distinctions between this case and Solem and apply the Solem objective criteria to McLester's conviction and sentence, McLester's claim is still without merit. In Seritt v. Alabama, supra, the Eleventh Circuit considered the specific issue now before us within an array of facts virtually indistinguishable from the instant facts. Like McLester, Seritt was sentenced to life without parole as a habitual offender pursuant to a conviction for first degree robbery. Seritt's underlying convictions were four 1975 convictions for violations of the Alabama Uniform Controlled Substances Act and a 1973 conviction for selling controlled substances. As noted in this court's opinion on Seritt's direct appeal of his robbery conviction, the four drug offenses arose out of a common occurrence or event and the four convictions rested upon pleas of guilty entered on the same day. Seritt, 401 So.2d at 250. After holding that the situation is indistinguishable from Rummel, for it is not an "extreme case," 731 F.2d at 731, and that Solem is "sharply distinguishable" and therefore inapposite, 731 F.2d at 732, theSeritt court weighed the objective factors delineated in Solem.
It determined that a sentence of life imprisonment without parole is not unduly harsh for a four-time convicted felon, who subsequently commits the crime of first degree robbery, 731 F.2d at 734; that Seritt was treated in the same manner in being sentenced to life imprisonment without parole as a habitual offender as defendants who have also been convicted of three prior felonies and then commit a Class A life-endangering offense, 731 F.2d at 735; and that it is not clear that Seritt had been treated more harshly than he would have been in Georgia, Mississippi, Florida, or Tennessee. 731 F.2d at 736. In conclusion, the court held that Seritt's sentence is proportionate to his crime of robbery in the first degree and that, under the facts, "the eighth amendment does not proscribe a sentence of life imprisonment without parole for a three-times convicted felon who thereafter commits a violent, life-threatening felony." 731 F.2d at 737.
We see no obstacle in following the rationale and appraisal of Seritt. "Outside the context of capital punishment,successful challenges to the proportionality of particular sentences [will be] exceedingly rare." Solem, 103 S.Ct. at 3009
quoting Rummel, 445 U.S. at 272, 100 S.Ct. at 1138 (brackets and emphasis added in Solem). This is just one in a long line of unsuccessful attempts to escape the service of a sentence mandated by the Alabama Habitual Felony Offender Act; it is not one of the "exceedingly rare" cases contemplated by the United States Supreme Court.
 II
In an alleged attempt to meet the second objective criterion set out in Solem, which requires a review of the sentences imposed on other criminals in the same jurisdiction, McLester submitted interrogatories to the Houston County District Attorney and Sheriff requesting the following information: (1) the name, date of conviction, sentence imposed, and date of release of each person convicted of robbery in the first degree in Alabama since January 1, 1980, and (2) the name, date of conviction, crime for which convicted, sentence imposed, prior record of convictions, and date of release *Page 876 
of each person sentenced to serve time in the State penitentiary since July 30, 1979 (the effective date of the Habitual Felony Offender Act). The trial court granted the request for protective order filed by the District Attorney on behalf of the State and the Board of Corrections. McLester now alleges that this action was error, for it denied him the proof necessary to establish that his sentence is disproportionate to those imposed on other Alabama criminals.
We find that the requested information was irrelevant to the inquiry before the trial court, since we held in our discussion of Issue I that the extended analysis of Solem was inapplicable in the instant case. Furthermore, such information is not necessary for an application of the proportionality analysis propounded in Solem. In Pulley v. Harris, ___ U.S. ___,104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Supreme Court held that comparative proportionality review of a death sentence is not required by the eighth amendment in every case. In so holding, the Court distinguished proportionality to determine if a sentence is unacceptable in a particular case and proportionality used in Solem to determine if a particular punishment is cruel and unusual for particular crimes, as follows:
 "Traditionally, `proportionality' has been used with reference to an abstract evaluation of the appropriateness of a sentence for a particular crime. Looking to the gravity of the offense and the severity of the penalty, to sentences imposed for other crimes, and to sentencing practices in other jurisdictions, this Court has occasionally struck down punishments as inherently disproportionate, and therefore cruel and unusual, when imposed for a particular crime or category of crime. See, e.g., Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). . . .
 "[A different] sort of proportionality review presumes that the death sentence is not disproportionate to the crime in the traditional sense. It purports to inquire instead whether the penalty is nonetheless unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime."
Pulley, 104 S.Ct. at 875, 76.
In observing the "abstract evaluation" of traditional proportionality, the trial court would not have been aided by the statistics requested by McLester. See Seritt v. Alabama, supra. Rather, the pertinent information is the statutory penalties authorized and imposed for other crimes within Alabama. The specific concern is "[i]f more serious crimes are subject to the same penalty, or to less serious penalties," since "that is some indication that the punishment at issue may be excessive." Solem, 103 S.Ct. at 3010. Accordingly, the trial court committed no error in granting the State's request for a protective order.
Our consideration of the issues raised on appeal convinces us that the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] U.S. Const. amend. VIII provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
[2] A further limitation on the application of Solem, not present in the case before us, is its crucial distinction that Helm would never be eligible for parole. The Solem Court purported to distinguish Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133,63 L.Ed.2d 382 (1980), on the basis that Helm was completely barred from the possibility of parole and the Court accordingly declared that this distinction set the facts of Solem outside the perimeter of the Rummel principles. 103 S.Ct. at 3016-17, n. 32. Thus, in delineating this specific distinction, the Court seems to be suggesting that the availability of parole is of primary concern in ascertaining whether the rule of Rummel
or the three-prong proportionality analysis of Solem is controlling. See Moreno v. Estelle, 717 F.2d 171, 180 (5th Cir. 1983). This court in Brooks v. State, 456 So.2d 1142
(Ala.Cr.App. 1984), and Wilbourn v. State, 457 So.2d 1001
(Ala.Cr.App. 1984), has indicated that, when confronted with any punishment other than life without parole, the proportionality test applied in Solem should be rejected for the rationale ofRummel. Compare Whitmore v. Maggio, 742 F.2d 230 (5th Cir. 1984) (where the court held that a sentence of 125 years' imprisonment without the benefit of parole required a Solem analysis).
[3] It appears that by this circumscription alone, we will rarely, if ever, be required to reckon with the precise holding of Solem, for as recognized by the court in Seritt v. Alabama,731 F.2d 728, 734 (11th Cir. 1984), with the exception of the offense of treason, all felonies triggering a mandatory sentence of life without parole are "only the most serious of offenses and those involving the risk that a human life will be taken." Thus, it is virtually inconceivable under the Alabama Habitual Felony Offender Act that a defendant convicted of anonviolent crime would receive a mandatory sentence of life without parole.