William Howard Olds was indicted for theft of property in the second degree in violation of § 13A-8-4, Code of Alabama, and for receiving stolen property in the second degree in violation of § 13A-8-18, Code of Alabama 1975. The jury found him guilty of both charges and he was sentenced to twenty-five years' imprisonment on each charge as an habitual felony *Page 518 
offender. Both sentences were to run concurrently.
At approximately 3:30 p.m. on May 6, 1983, Cornelius Arrington, who was employed by Gresham, Smith and Partners, Architects, was in his office which is located next to Brookwood Mall in Homewood, Alabama. He looked out of his window and saw a man crawling around a car in the parking lot of the Brookwood Convenience Center. The man had a device in his hands and was popping hubcaps off of a burgundy Chevrolet. The man then got in a green and white Monte Carlo. Arrington notified his co-workers and the tag number of the Monte Carlo was obtained through the use of binoculars.
After observing this situation, one of Arrington's co-workers, Don Williams, got in his van and followed the Monte Carlo onto Highway 280 going east. Williams pulled up behind the Monte Carlo and blinked his lights. The Monte Carlo then accelerated. Williams followed the Monte Carlo until it hit another car at the intersection of Rocky Ridge Road and Highway 280.
Immediately after the accident, both occupants of the Monte Carlo jumped out and ran. Williams pursued the passenger and caught him with the help of another man. The passenger was identified as the same man who was seen removing the hubcaps from the burgundy Chevrolet.
John Wessinger, a Mountain Brook police officer, responded to the accident. He radioed the description of the driver of the Monte Carlo to the other units. A few minutes later, Officer Tom Mayhall saw a man who fit the description of the driver walking on Green Valley Road, approximately one-quarter mile from the accident scene. This man was transported to the accident scene where he was identified as the driver of the Monte Carlo. The appellant was identified as the driver of the car.
At the police station, the appellant was given his Miranda
rights and signed a waiver of those rights. He admitted driving the Monte Carlo and said it was owned by his wife, Margaret Little. When asked about the hubcaps, he stated he didn't want to talk about them.
Ken Jones, the evidence technician for the Mountain Brook Police, went to the scene of the accident. He arranged for a wrecker to tow the Monte Carlo back to the station. At 6:45 p.m., Jones conducted an inventory search of the Monte Carlo. In the front seat, he found three screwdrivers, a bottle of wine, a hat and some papers. In the back seat were a set of wire wheel covers with broken locks, three watches, a jacket and a blanket. Jones found four wire wheel covers with the word Landau on them in the trunk, along with some rope and a pair of pants.
Betty Roddam testified that she went to work in Brookwood Village on May 6, 1983 at 11:00 a.m. She parked her red Chevrolet in the parking lot. The car had wire wheel covers with locking devices on them and they were in place when she parked her car. Later that day, she was notified that the wire wheel covers had been stolen. She identified the wheel covers, found in the back seat of the Monte Carlo, as the ones that belonged on her car. She stated their value was $250.00-$300.00.
Brenda Waide stated that she went to work at Robbins Engineering in Homewood at 8:00 a.m., on May 6, 1983. The wire wheel covers to her car were there when she left her car. When she got off work at 5:00 p.m., the wire wheel covers were gone. She called the police and that night identified the hubcaps found in the trunk of the Monte Carlo as hers. She stated their value was $350.00.
Laymon Strickland, the owner of Jones Auto Parts in Bessemer, Alabama, stated that he sells new wire wheel covers for Roddam's and Waide's model cars for $90.00.
 I
The appellant contends that the police lacked probable cause to conduct a warrantless search of the trunk of the automobile which he was driving, and, therefore, the evidence which was *Page 519 
discovered during the course of the search should have been excluded. We must disagree.
The evidence at trial showed that the Monte Carlo was lawfully impounded by the Mountain Brook Police Department at the scene of the accident. The hubcaps found in the trunk were discovered during a routine inventory search of the vehicle.
Routine inventory searches of lawfully impounded vehicles are not considered unreasonable searches under the Fourth Amendment. South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
The inventory search of the Monte Carlo was constitutional and therefore the hubcaps found in the trunk were properly admitted into evidence. See Sterling v. State, 421 So.2d 1375
(Ala.Crim.App. 1982); Lippold v. State, 365 So.2d 1015
(Ala.Crim.App. 1978), cert. denied 365 So.2d 1022 (Ala. 1979).
 II
The appellant claims the State failed to establish that the value of the hubcaps was above the amounts required for a conviction of theft in the second degree and a conviction for receiving stolen property in the second degree.
There was conflicting evidence presented at trial as to the value of the hubcaps. However, the owners of the hubcaps testified that each set of hubcaps was valued at over $100.00, the amount necessary to sustain the appellant's conviction on both of these charges.
When conflicting evidence is presented at trial, it is within the province of the jury to resolve these conflicts. Boggan v.State, 455 So.2d 228 (Ala.Crim.App. 1984); Willis v. State,447 So.2d 199 (Ala.Crim.App. 1983); Howard v. State, 417 So.2d 599
(Ala.Crim.App. 1982).
The jury in the case at bar resolved the conflicting evidence in favor of the prosecution. A verdict rendered on conflicting evidence is conclusive on appeal if the State has presented a prima facie case, as was done here. Willis, supra; Gunn v.State, 387 So.2d 280 (Ala.Crim.App.), cert. denied,387 So.2d 283 (Ala. 1980).
 III
The appellant urges this court to review his sentence of two concurrent twenty-five year terms. He argues that his punishment was disproportionate to the crimes he committed and, therefore, his sentence is in violation of Solem v. Helm,463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
We have applied the Supreme Court's proportionality analysis in Solem, supra, and find that the appellant's sentences were not disproportionate. The appellant had three previous convictions for grand larceny, one for forgery in the second degree, one for the violation of the Credit Card Act and one for the violation of the Alabama Controlled Substances Act. The two convictions on this appeal were the appellant's seventh and eighth felony convictions.
The appellant's sentences were within the statutory limits authorized by the Habitual Felony Offender Act and are in line with sentences imposed in similar cases. See McLester v. State,460 So.2d 870 (Ala.Crim.App. 1984); Pickens v. State,447 So.2d 867 (Ala.Crim.App. 1984).
Furthermore, this case can be distinguished from Solem, supra. In that case, Helm was ineligible for parole, while the appellant has the possibility of parole open to him. McLester, supra at 873, footnote 2; Brooks v. State, 456 So.2d 1142
(Ala.Crim.App. 1984).
The appellant's sentences were therefore proper.
For the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 520